REA AND DOHRMAN, Appellants, *v.* J. G. COPELIN, Respondent.

1. *Agency — Co-owners of boat — Private bargain for transportation of freight — Trust.—* One who was a part owner and general active and managing agent of a steamboat, made a contract in his own name for the transportation of certain freight at a specified price. The contract was not made with reference to its being performed by the steamer mentioned, which was not at that time in port; but the contractor made use of the boat for the transporta-

tion of the freight, without mentioning to his co-owners his private arrangement as to price of freightage. *Held,* that he occupied a relation of trust toward the co-owners, and that they had a right to presume that he would exercise the most entire good faith in his dealings toward them, and that in any business in which he employed the boat they were entitled to a proportionate share of the profits received and earned.

2. *Agency —Trustee not allowed to profit out of his trust—Application of rule.* — The rule that a trustee is not allowed to make a profit out of his trust is based on a principle of human nature that no person having a duty to perform shall be allowed to place himself in a situation in which his interest and his duty may conflict; and by a trustee, in this sense, is meant a person who acts representatively, or whose office is to advise and operate not for himself, but for others. This principle applies to and includes executors, administrators, guardians, attorneys at law, general and special agents, assignees, commissioners, sheriffs, and all persons, judicial or private, ministerial or counseling, who in any respect have a concern in the business intrusted to them.

*Appeal from St. Louis Circuit Court.*

*Cline, Jamison & Day,* for appellants.

I. By reason of his fiduciary relations, defendant's claims, as set up in this case, are rendered absolutely fraudulent and void. The law will never permit any one who acts in a fiduciary capacity to make the least profit or speculation out of the trust property or out of the relation he sustains to the subject-matter of the trust or his relations to it. (Sims v. Brittain, 4 B. & Ad. 375; Owston v. Ogle, 13 East, 538; 1 Young, 362.) Agents can not act so as to bind their principals when they have an adverse interest in themselves. (Paley on Agency, 10, 33, note *l*; Pars. Cont. 56, 5th ed.; Hill on Trustees, 156; Adams' Eq. 396, 410; 2 Rob. 556; Olcott v. Tioga R.R. Co., 27 N. Y. 546; Moore v. Moore, 5 N. Y. 256; Thompson v. Havelock, 1 Campb. 507; Parks v. Alexander, 1 Johns. Ch. 394; Copeland v. Ins. Co., 6 Pick. 198, 204; Gillett v. Peppercorne, 3 Beav. 78; Irvine v. Marshall, 20 How. 558; Massie v. Watts, 6 Cranch, 148; 28 Penn. 124; Michaud v. Gerod, 4 How. 503–52; Wain v. Dillon, 27 Miss. 494; Sto. Agency, § 211; Bartholomew v. Leach, 7 Watts, 472; Conger v. Ring, 11 Barb. 356–63; 5 Johns. Ch. 388; 6 Ves. 625; 2 Johns. Ch. 252; Lees v. Nutall, 1 Russ. & Myl. 53; Crook v. Williams, 20 Penn. 342–5; 1 Mason,

341–4; Sto. Eq., §§ 322–3; 6 Pick. 198–204; Paley on Agency, 32; *id.* 47; 2 Mason, 369; Baker v. Mar. Ins. Co., 1 Mason, 341.)

II. The plaintiff and defendant stood toward each other in the relation of partners or quasi-partners in the building, equipping, and running the Deer Lodge, and the law of partnership will apply to it in so far as to render them liable to account to each other as such. (1 Pars. Ship. & Ad. 91; Dodington v. Hallett, 1 Ves. Sr. 497; Mumford v. Nicholl, 20 Johns. 611; 4 Johns. Ch. 522; Mary v. De Wolff, 3 Woodb. & M. 193; Hewitt v. Sturdevant, 4 B. Monr. 453; Hinton v. Law, 10 Mo. 701; Gardner v. Cleveland, 9 Pick. 334; Julio v. Ingalls, 1 Allen, 41; Bulfinch v. Winchenback, 3 Allen, 161; Pragoff v. Heslep, 1 Am. Law Reg. 747; Holderness v. Shackels, 8 B. & C. 612; 3 Man. & R. 25; Starbuck v. Shaw, 10 Gray, 492; Woods v. Steamboat Ft. Adams, 6 Martin, 82, N. S.)

*Rankin & Hayden*, for respondent.

I. The defendant, Copelin, was not in any sense a trustee for Rea and Dohrman. The evidence shows he was a merchant, contractor, common carrier on his own account, and the owner of many boats; that he made, by his own resources, through contracts, the gains of which defendants never claimed. The Deer Lodge, or any other boat, or horses and wagons, were used to carry goods parts of the way, as occasion demanded. These were merely tools by which the work was done. But the referee, personifying the boat, found that Copelin was acting " for the boat;" argued thence that he was " the boat's agent," and then assumed that Rea and Dohrman were " the boat," and therefore the principals of Copelin. But, in fact, the boat was a chattel and Copelin tenant in common of six-eighths of it. If Copelin was "agent of the boat," as he was himself the boat (at least six-eighths of it), he was an agent who was his own principal. But this is not all. As Copelin was thus acting merely "for others," and as those others were minority owners, while he was a majority owner, we have the case of a majority owner (to whom the law gives power to control the boat) becoming agent of those whom

the law places under his control. The maxim *omne majus in se minus continet* is here reversed. The rule of law invoked by the other side, we admit; but it has no application here. (See Wallace's note to Pitt v. Mackreth, and Fox v. Mackreth, 1 Lead. Cas. in Eq. 172, 209.) Copelin was acting for himself, as he had a right to act. The fact that, while managing his six-eighths, he did things which affected the two-eighths, was a physical necessity which must exist in every case where a chattel is owned by more than one person.

Furthermore, the law of shipping gives the majority owner the right, by virtue of his ownership, to take, hold, and control. (Sto. Part., §§ 427–8; Abb. Ship., ch. 3, § 2 *et seq.*) By this law Copelin was in no sense ship's husband. He was majority owner. (Abb. Ship. 121; 5 Burr. 2727; 2 Stark. 345; 8 Wend. 144; 7 B. Monr. 595.) No case can be found where it is held that a majority owner is trustee for minority owners. It is not pretended that Copelin was ever appointed agent, trustee, or ship's husband. It is assumed that he so acted, and the evidence shows he acted for himself. What applies to a partner ought, *a fortiori*, to apply to a part owner; and even a partner is not held as agent or trustee for his co-partners in such cases. (Glassington v. Thwaites, 1 Sim. & Stu. 124; Wheeler v. Sage, 1 Wall. 518.)

II. If the defendant was in any sense a trustee for the plaintiffs, still the contract between him and the government did not inure to plaintiffs. There is no one point of connection between this contract and the plaintiffs'. Even the referee finds that the contract was solely that of defendant; was made in perfectly good faith, and without any reference to the Deer Lodge. If the contract was defendant's, could not he select the tools to perform it? He was at liberty to choose his own boat. The notion of the referee seems to be that the defendant's contract inured to plaintiffs when the Deer Lodge was selected. But the defendant, by selecting another boat or chartering a stranger's, could have kept the plaintiffs from any share in the contract. If so, what becomes of "the policy of the law," which requires "the most unselfish and disinterested fidelity of the agent (*i. e.*, the person

who owns only six-eighths) to the interests of his employer"
(*i. e.*, the person who owns two-eighths)? How can this "policy
of the law" be subserved, when the very knowledge that this is
the rule will at once enable the majority owner to avoid it and its
consequences by selecting another boat? Again, on the referee's
theory, what becomes of the principle, *qui sentit commodum
sentire debet et onus?* All the burdens of this contract are
borne by Copelin. He alone made it and gave the heavy bond
required by the government for its performance. He alone, by
reason of his teams, etc., in the upper country, could insure
transportation. If disaster had ensued, his bond would have been
resorted to. Government was ignorant of the existence of Rea
and Dohrman, who waited, allowed others to labor, and, without
risk to themselves, ask now to reap where others have sown.
Such is the doctrine of "inurement." The rule invoked by
plaintiffs can not be applied to the circumstances of this case.
On this point see, generally, Knight v. Majoribanks, 2 McN. &
G. 10 ; Cane v. Lord Allen, 2 Dow, 289 ; Edwards v. Meyrick,
2 Hare, 68 ; Lord Selsay v. Rhodes, 2 Sim. & Stu. 41, 50 ;
Maloney v. Kernan, 2 D. & W. 31 ; Farmer v. Brooks, 9 Pick.
231 ; Spindler v. Atkinson, 3 Md. 409 ; Hawker v. Cramer,
4 Cow. 719, 740 ; Poillon v. Martin, 1 Sandf. Ch. 572 ; Stewart
v. Kissam, 2 Barb., S. C., 505 ; Bolton v. Gardner, 3 Paige
Ch. 279.)

WAGNER, Judge, delivered the opinion or tne court.

The counsel for the respondent, in their argument in this court,
have abandoned all objection to the report of the referee except
the first in the series, which objection was decided in their favor
and sustained by the Circuit Court. On the sustaining of that
objection, and the modification of the judgment in conformity
thereto, the plaintiffs appealed to this court. The suit was
for an account growing out of the earnings on a certain trip
of the steamboat Deer Lodge, of which the appellants and the
respondent were respectively the owners. The appellants owned
each one-eighth part, and the respondent owned the remaining
six-eighths.

The referee found as facts from the evidence that on or about the 30th of May, 1866, the respondent, in his own name, entered into a contract with the United States military authorities at St. Louis, whereby he bound himself to transport one hundred and fifty tons of quartermaster's stores from St. Louis to Fort Benton within one hundred days after the 10th day of June then next, unavoidable dangers and accidents only excepted, for which he was to be paid fifteen cents per pound if the transportation should be wholly by water, but if partly by water and partly by land, then twenty-one cents per pound. The contract was not made with reference to its being performed by the Deer Lodge, which boat was not at that time in port. But before the respondent had procured any other vessel for the service the Deer Lodge came into port, and he thereupon caused the stores for Fort Benton, together with fifty tons of other government freight contracted to be delivered at points below that place, to be put aboard that vessel, to be transported to its destination by water, if practicable, but if not, then to such point on the river as the vessel could reach safely, without any agreement or understanding with the appellants, who were officers on the boat, as to the compensation to be paid to the boat for her services. She proceeded upon her voyage, and in due time delivered all the freight at its destination, wholly by water, and the respondent thereupon received the stipulated price for carrying from the government. The referee further found, as a fact from the evidence, that during the whole period of the time covered by the negotiation of the contract for the freight and its complete delivery at its destination, the respondent was the avowed acting and active agent of the Deer Lodge in procuring freights and making contracts of affreightment for her and in receiving and disbursing her moneys. After the return of the boat to the port of St. Louis a controversy sprang up between the parties, when attempting to adjust the affairs of the boat, as to the amount to be credited to the boat for the transportation of the government freight, the respondent insisting that she was entitled to credit only for what the service was reasonably worth, and that that was one-half of the amount paid by the government and received by the respondent. While,

on the other hand, the appellants insisted that the true measure of credit was the sum actually paid by the government; and further, that the services were reasonably worth that amount. Upon the subject of reasonable worth for the transportation, the referee made no finding of facts, as he considered it immaterial under his view of the law. His conclusion of the law upon the above facts was, that as the evidence showed that respondent was intrusted by the boat and its owners to secure freight and make contracts of affreightment for and in the interest of the boat, he could not set up a contract made in his own interest,. on the subject of his agency, in opposition to the interest of his principal, and he therefore awarded to the appellants their proportionate share according to the stipulated rates of the contract made with the government, deducting, however, certain expenses which had been incurred to provide for the contingency of a land carriage for part of the trip. This conclusion of the referee was set aside in the Circuit Court and the allowance reduced as contended for by the respondent.

The material question to be decided is whether it was competent for Copelin, acting in his capacity of general agent for the boat, to make a private speculation out of the transaction. It is true that he contracted for the transportation of the freight in his own name, but he used the boat, for which he was acting and of which he was the avowed general active and managing agent, to complete and carry out his contract. He said nothing to the appellants, the officers and co-owners of the boat, respecting any private arrangement that he had as to the price to be paid in carrying the freight. Under such circumstances did not all those jointly concerned in the boat have a right to expect and believe that he would use his best endeavors to promote their joint interests, and not attempt to speculate at their expense for his private benefit? The whole management and control was committed to his hands. Whilst the appellants were giving their services to the running of the boat and employing their skill and labor to make their enterprise successful, he was the agent who engaged the freight, received the money, made the disbursements, and attended to all transactions pertaining to the business. He occupied a

Rea et al. v. Copelin.

relation of trust, and all confided in him; and the rule that a trustee is not allowed to make a profit out of his trust is based on a principle of human nature that no person having a duty to perform shall be allowed to place himself in a situation in which his interest and his duty may conflict; and by a trustee, in this sense, is meant any person who acts representatively, or whose office is to advise and operate, not for himself, but for others. This principle applies to and includes executors, administrators, guardians, attorneys at law, general and special agents, assignees, commissioners, sheriffs, and all persons, judicial or private, ministerial or counseling, who in any respect have a concern in the business intrusted to them. As remarked in a recent case in this court, the law does not presume that such a transaction will always be impressed with fraud, but it furnishes an inducement to fraud and affords opportunities to persons who should always act with the most scrupulous and conscientious good faith, to abuse their trust, "and therefore a total disability is enjoined to take away all temptation." (Grumley v. Webb, 44 Mo. 444, *and cases cited.*)

I perceive no merits in the argument that because the respondent owned the greater part of the boat therefore he was acting for himself, and the rule ought not to apply. Others were interested in the boat, and he was acting for the joint interest of all. Whatever advanced their interests advanced his also in the same proportion; but because he owned the major part, he could not be permitted to use the whole for his benefit, and to the detriment of the others.

I think that the appellants had a right to rely on and presume that the respondent would exercise the most entire good faith in his dealings toward them, and that in any business in which he employed the boat they were entitled to a proportional share of the profits received and earned.

If these views be correct, the judgment of the Circuit Court should be reversed and that of the referee affirmed; and with the concurrence of the other judges, it will be so ordered.