OPINION of the Court, by
Ch. J. Edwards.
— This is a motion to dismiss the appeal, because the appeal [Jonq has not been properly executed. The facts are, that Thomas Deye Owiugs, the principal, acknowledged the bond in. the presence of a deputy clerk, and that Thomas Fletcher, the security, did not acknowledge it in the office or in the presence of any clerk, but only before Green Clay and Jilson Payne. The act of the ¡eg'lsiature ⅛ such cases made and provided, expressly reqUjres^ ;n (0i¡rfem yeri)is, that the bond should be executed in the office of the clerk of the inferior court, as a prerequisite to the effectuation of an appeal ; and the question submitted to the consideration of the court, is whether under the above circumstances the bond was properly executed.
On behalf of the motion, it has been contended that an appeal bond should be considered as a record ; and that to entitle it to such verity as a record imports, it is indispensable that it should have been executed in the office according to the statute.
On the other side, this position is denied, and it is contended that the bond is ene to which the rules of law, governing ordinary cases of bonds, apply ; and that therefore, it is not necessary it should have been executed in the office ; the true construction of the act being only that such a bond should be lodged or deposited' in the office for safe keeping.
Between those two different opinions it is not necessary for the court to decide, since in.either case, we are dearly of opinion, that the bond should be executed in the office ; and to prove this, nothing more would seem to be requisite, than the plain and unambiguous language in which this mode is prescribed by the legislature. The legislative body is the supreme power of *215 the state, and whenever it acts within the pale of its constitutional authority, the judiciary is bound by it, and it is not competent to the latter tribunal to dispense with a regulation or requisition plainly prescribed by the former (its superior,) or to say that this mode, that or the other, is as good as the one dictated by the legislature ; for this, in fact, would be placing the judiciary above the legislature, by enabling the former to nullify the acts of the latter or to supersede them by substitutes, to which the legislature might not have assented, had the proposition been submitted to it. If we can say, that though the legislature has required the appeal bond to be executed in the office, it is sufficient if executed out of the office before private individuals, and afterwards deposited in the office ; why might we not also say, that though required to be executed in the office of the inferior court, it is sufficient if executed in the office of this court ? One set of judges might think the former would be a sufficient compliance with the legislative intention ; another set, adopting the principle that they had a right to depart from the words of the act, might think the latter a sufficient compliance ; and a third set, adopting this course of reasoning, viz. that as the legislature was competent to command, it ought to be obeyed, and having commanded the thing to be done in one way, all other ways were excluded ; they might think themselves bound to decide upon the words of the act itself ; and thus among them produce that uncertainty which has hitherto, and with too much justice, been the reproach of the law. Besides, therefore, being a point of duty, it is much safer to make the law itself the rule of action, when it is plain arid intelligible ; it is best calculated to produce uniformity of decision, and to cause it to be understood by the mass of the people on whom it is designed to operate.
In general the law itself is plain enough according to the letter of it; men of very ordinary capacities are capable of understanding it; but there have been so many subtle, refined and artificial rules of construction devised by ingenious lawyers, and adopted by supple courts, in explaining a legislative act, or supplying the defect of a party in bringing himself within its provisions, that in many instances a man of good judg *216 ment and, of considerable legal science, cannot antici-Pate w^at decision courts will give on the plainest statute. There is not a lawyer but knows, that the most abtruse and doubtful part of legal science, has arisen from the cause abovementioned. Witness the various and irreconcilable decisions under the statute of limitations, the statute of frauds and perjuries, &c. One judge has at one time declared, that to admit certain constructions of a particular statute, would amount to a virtual repeal of it; another judge, of precisely the same grade, and sitting on the same judicial seat, at another time has declared that the very same were legitimate constructions, and fairly deducible from the statute itself ; and thus have judicial decisions (the evidence of the law,) been rendered uncertain and vibrating according to the whim, caprice, or judgment of different men, who all had an equal right to judge. They have made the legislature mean any thing, every thing and almost nothing, as suited the particular case before them ; and this will ever be the case, whilst this arbitrary field of discretion is assumed and exercised by judges ; and until the acts of the legislature, according to their plain 'and obvious import, unembarrassed by mere technical and artificial rules, are made the proper and governing rules of decision. If the law should prove to be defective, inadequate to the object of it, or oppressive in its operation, it is certainly more peculiarly the province of the legislature, than the judiciary, to supply or remedy those defects. In the judiciary the .exercise of sucha power is not warranted by the constitution under which we act ; it is contrary to it, and must therefore be an unjustifiable assumption of power.
/ ©pposed to all this reasoning, is the very convenient and pliant common law maxim, qui hceret in litera hceret in cortice; a maxim, which under great limitations, may be correct and not without its use ; but which according to the expanded ground it has been made to occupy by some judges in England, is not only intrinsically incorrect, but of the most dangerous tendency ; ""because it renders perplexed the rules of decision, it enlarges at; arbitrary discretion in judges, and encroaches on legislative authority. It is congenial enough to arbitrary governments, where the judiciary becomes the engine of thg court; in such governments it furnishes the judg *217 es with great facilities in subserving the views of the court, or others whose interest they may be disposed to promote ; nothing is more easy than to decide to-day, that such is the spirit of the law ; such was the intention of the legislature ; such alone the evil intended to be remedied. In a short time the subject may present itself in a point of view, a little varied from the former one ; and finally, the judges may return to the law, and enforce it according to the letter of it, and nothing is more natural, and many times nothing is more just than the apology “ huraanum est errareBut i* so much as the principle is adapted to arbitrary governments, in just so much it is uncongenial and dangerous to ours, and therefore it ought to be circumscribed within a very narrow compass ; to effect which, this court has recently in several instances gone great lengths, and probably may find it necessary to go still farther.
In the present case the rule prescribed by the legislature is a plain and intelligible one ; the party who claims the benefit of the law, could have pursued it ; if he did not choose to do so, the court ought not to aid his negligence and supply the defect by adopting a perplexed and doubtful system of adjudication, and interposing an illegitimate dispensing power over the acts of the legislature. The legislature, as before premised, has declared the bond should be executed in the office ; it had the right so to declare ; we have no power to nullify the act, or to supersede it by a substitute. We therefore must sav, “ ita lex scripta est” and the defendant in this motion must be bound by it.
Independent however, of the binding and obligatory force of the act itself, whether it is wise or unwise ; the rule it furnishes appears to be founded in reason, in convenience, and is justified by sound policy.
An appeal is as well calculated to promote the purposes of delay, as those of justice ; and while on the one hand it secures to the appellant a revision of his case in the appellate court, whereby he may obtain relief if he is entitled to it, it imposes upon him such equitable conditions as are calculated to save the appellee from, eventual loss, in consequence of the procrastination which must necessarily arise therefrom. The appeal bond is evidently therefore, designed for the security of the appellee, in the taking of which, the legislature could *218 not have intended to render the appellee more insecuvá than he would be in taking an ordinary bond, which would unquestionably be the case, if the construction of the act, as contended for by the defendant’s counsel, is correct ; for if it is true that the bond need not be executed in the office, nor attested by the clerk, it follows that it would be sufficient if acknowledged before, and attested by any competent witnesses. The vilest and most profligate wretch, covered with such infamy as totally to destroy his credibility, provided he had not been rendered incompetent by conviction or otherwise, would be sufficient to attest it; a mere itinerant, a transient person who had never been heard of before, and who probably might never be found again, might be selected by the appellant, and no objection could arise if he were a competent witness, or one might be selected who though ever so well known might reside at so remote a distance, as to render the procurement of his testimony so difficult and inconvenient, if not impossible, as to defeat the very object of the attestation. The clerk could have no discretion on the subject; if the bond was legally executed, he would be bound to certify it; the appellee could have no control in it, for the business so far as relates to the effectuation of an appeal, is totally out of his power, it wholly depends on the acts of the appellant, and if the law has given him such an arbitrary discretion to select whom he pleases as witnesses, it has rendered the appellee more insecure than any prudent man would be in an ordinary case ; for it cannot be presumed that any man of ordinary circumspection, would accept of an instrument of writing attested by such witnesses as an appellant might procure, provided he wished any attestation at all; if he wished an attestation, it must be from an apprehension that the obligor might render the production of witnesses necessary j and if he entertained such an apprehension he surely would not be satisfied with witnesses who would not be believed when produced, with witnesses who could not be produced, or with witnesses whose production might cost him more trouble and expences than they could profit him.
Besides these objections, there would certainly be danger of forgery, for the clerk could make no objection to the bond (if he is the mere depository of it? as *219 was contended) provided it appeared regular and correct on the face ofit; to give it this appearance, contrary to the truth, would be quite easy, and the difficulty of detecting the impositionmight be a strong temptation to practice it,
There would also be danger of perjury, if danger could arise from temptation; for the difficulty of proving the execution of a bond, where the witnesses to it had been previously selected by the obligor himself, might afford a strong temptation to plead non estfactunz, and thereby to put the proof upon the obligee ; to guard against all these incouveniences and dangers, the legislature has wisely determined, that the bond shall be executed in the office, which not having been done in this case, the appeal must be dismissed,