BLANCHARD and SAWYER *vs.* BLOOD and wife.

The husband acquires, by marriage, an absolute title to all the personal property of
the wife, which she had in possession at the time of the marriage, such as money,
goods, or chattels of any kind; and on her death, such property goes to his personal
representatives, and not to his wife.

For the taking and conversion of personal chattels, *after* marriage, which belonged
to the wife *before* marriage, the husband must sue alone; and the joinder of his
wife with him is ground for demurrer, arrest of judgment, or error, if it appears on
the record, and of a nonsuit, if it arises out of the evidence at the trial.

The husband and wife should join, in all cases, where on the death of the husband
the cause of action would survive to the wife.

Where no trustee of the wife is appointed, in an ante-nuptial marriage settlement,
a court of equity will treat the husband as trustee.

· ON the 15th of September, 1846, Charles Blood and wife, the
plaintiffs, brought an action against Sawyer and Blanchard, the
defendants, before a justice of the peace of Franklin county,
and on the joining of the issue, they declared in trover for three
cows, which the defendants wrongfully took and converted to
their own use, to the plaintiffs' damage of one hundred dollars.
The defendants pleaded the general issue and a justification
by virtue of an execution issued out of the Franklin county
common pleas, in favor of Seth Blanchard against Charles
Blood, for $100,93.   On the 16th of October, 1846, the cause
was tried before the justice, and the plaintiffs before the justice
recovered against the defendants, $45 damages, and $3,64 costs.
From this judgment, the defendants appealed to the Franklin
common pleas, and the cause was tried in that court at the
April term, 1847; when a verdict was found for the plaintiffs,
Charles Blood and wife, for fifty-three dollars damages.   A bill
of exceptions was taken in the trial, by the defendants' counsel,
to certain decisions of the common pleas; and the cause was
brought before this court on a writ of error.

On the trial on the common pleas, the plaintiffs' counsel intro-
duced and proved an ante-nuptial agreement under the hand and
seal of the plaintiffs, Charles Blood and Clarissa Baker, then a,

single woman, but now the wife of the said Charles Blood, bearing date at Cornwall in Upper Canada, the 29th of June, 1822. This instrument recited that a marriage was about to be solemnized between the said Chas. Blood, of Fort Covington in the state of New-York, and Clarissa Baker of Cornwall, Upper Canada; that the said Clarissa was the owner, in her own right, of certain real estate in Canada, and certain personal chattels, among which are named three milch cows, and the whole of which articles are set out, with the valuation thereof, in a schedule annexed; and it was thereupon covenanted and agreed that all the said real and personal estate should be forever at her disposal, notwithstanding the said marriage, and in case the said intended marriage was solemnized, the said Charles Blood should not become the owner, or have any right, title, or claim to any part of the said property, but the same should remain her property and be solely at her disposal, and never be directly or indirectly applied to any other purpose than what she should direct; and in case the marriage was solemnized, and the said Charles should die before the said Clarissa, none of her property should be taken to pay his debts, but should be and remain at her own disposal.

It did not appear when the marriage was solemnized, but it was assumed on the argument to have been shortly after the date of the articles. It was proved that in the last week in May, 1846, the defendants took three cows, which were the third generation of the three cows mentioned in the ante-nuptial contract. The witness understood the defendant Sawyer acted as a deputy sheriff, and had an execution against Charles Blood. The cows taken were raised on the farm on which the plaintiffs have lived ever since they were married. It appeared that this farm was bought with the money of Clarissa, and was her farm. Other evidence was given, but not material to the questions raised. The defendants' counsel moved for a nonsuit on the grounds, 1st. That this action could not be maintained in a court of law; the remedy, if any, being in equity. 2d. That the action should have been brought by the husband alone, as husband or trustee of the wife, and that the

wife was improperly joined. The motion was denied by the court, and the defendants' counsel excepted.

*Parkhurst & Beckwith*, for the plaintiffs in error.

*Hutton & Nutting*, for the defendants in error.

*By the Court*, WILLARD, J.   The bill of exceptions assumes that the property taken by the defendants, belonged in equity, to the wife, under the ante-nuptial agreement given in evidence.   And the first question it raises is, whether the remedy is rightly sought in an action at law by the husband and wife.   It was formerly supposed that the interposition of trustees was in all cases of this sort, whether before or after marriage, indispensable for the protection of the wife's rights and interests.   But, though in strict propriety that should always be done, and it is usually done in regular and well considered settlements ; yet it has been for more than a century established in courts of equity, that whenever real or personal property is given or devised to, or settled upon, a married woman, either before or after marriage, for her separate or exclusive use, without the intervention of trustees, the intention of the parties may be effectuated in equity, and the wife's interest protected against the marital rights and claims of her husband.   (2 *Story's Eq.* 607, § 1380, *and cases cited.* 2 *Kent's Com.* 162.)   In such case, the husband will be considered the trustee, whether he was a party to the instrument under which the wife claims, or not.   (1 *Mad. Ch.* 376.)   When the husband stipulates, before marriage, that his wife shall enjoy her own property, as in this case, he will be bound in equity to perform his agreement, even though it was entered into with the wife herself, and became suspended, at law, by his subsequent marriage.   (2 *Kent's Com.* 163.)   And a court of equity will compel him to account with his wife for her separate estate received by him without her knowledge.   (*Clancy's Rights of Women*, 351, 354.)   In the present case, no doubt a court of equity would, on a bill filed by the wife against her husband, restrain him from applying

Blanchard *v.* Blood.

her separate property to the payment of his debts, without her consent—or from committing any other violation of his duty as trustee.

In a court of law, however, the rights of these parties are viewed in a different light. There, the strict rule of the common law prevails. That rule is correctly stated by the elementary writers, thus: The husband, by marriage, acquires an absolute title to all the personal property of the wife, which she had in possession at the time of the marriage; such as money, goods or chattels of any kind. (*Reeve's Dom. Rel.* 1.) "Marriage," says Clancy, page 2, "operates as an absolute gift to the husband of all the property coming under the description of personal chattels which were in the possession of the wife at the time of the marriage." *Co. Litt.* 351, *b.*; 2 *Kent's Com.* 143; *Butler's note* 304 *to lib.* 3, *Co. Litt.* are to the same effect. The property now in controversy is personal chattels; and at law is the property of the husband. For an injury to this property, or a conversion of it, the husband alone can sue. The wife has no legal interest in it, and she is not a proper party plaintiff in the suit. (1 *Chit. Pl.* 62. 2 *Saund.* 471. 6 *Watts*, 301. 1 *Russ.* 67. 1 *Bibb*, 217.) On his death, it goes to his personal representatives, and not to his wife by survivorship. (2 *Kent's Com.* 143.)

The cases relied on by the counsel on the other side, are all cases of actions for injuries to the wife's real property, affecting the inheritance, or to the choses in action of the wife before coverture, or to personal injuries to the wife during coverture. In all these cases the wife is in general a proper and necessary party. The rule is that in all cases where, on the death of the husband, the cause of action would survive to the wife, the husband and wife ought to join. (*Reeve's Dom. Rel.* 125, 126.)

The consequences of a misjoinder of the wife, if the objection appears in the declaration, are, that the defendant may demur, move in arrest of judgment, or bring error. (1 *Chit. Pl.* 64.) If it does not appear on the record, 'but arises out of the evidence, it is the ground of a nonsuit at the trial. We think the

wife was improperly joined in this case ; and for that reason the judgment should be reversed.

The other point, namely, that this action cannot be maintained in a court of law, the remedy being in equity, does not properly arise in this case. The defendants cannot object that Charles Blood is abusing the trust confided to him by the antenuptial contract. None but the wife can raise that question; and that only in a court of equity. At law, it has been seen, the property in question is his. As between him and his creditors it may be taken for his debts; though doubtless a court of equity, on a bill filed by her against her husband and the creditor seizing the property, would protect the rights of the wife. So also in equity, a judgment recovered by the husband, for the property, would be treated as belonging to the wife. A trustee cannot gain an advantage to himself by changing the nature of the trust property. (*See* 2 *Story's Eq.* 456, 457, *and cases there cited.*)

Judgment reversed.