GORDON, *Administrator, Appellant*, v. EANS.

1. **Administration:** EMBEZZLEMENT OF ASSETS : JURISDICTION OF PROBATE COURT. In a proceeding by an administrator, in the county court having probate jurisdiction, under Wagner's Statutes, section 7, page 85, against the widow of his intestate for embezzling the property of the estate, where the deceased was in the apparent ownership and possession of the property in dispute, which at his death went into the possession of his widow and was openly held by her upon the simple claim of title thereto as her separate estate, the court has jurisdiction for the sole purpose of ascertaining the guilt or innocence of the defendant of the embezzlement charged. And where it appears that plaintiff's intestate had no title to the property, or that defendant's appropriation of it to her own use was not fraudulent, but in good faith, under a valid claim of title, she should be acquitted of the embezzlement and should not be compelled to surrender the property. But beyond this, the probate court has no jurisdiction to settle the respective rights of the parties to the property, and if they wish to litigate and enforce their rights to it, they should resort to jurisdictions other than the probate court. ( *On rehearing* ).

97 587
34a 358
97 587
108 61
97 587
52a 667
97 587
116 151
97 587
71a 404
97 587
150 51
97 587
82a 352
97 587
158 523
97 587
163 241
97 587
e178 ¹264

Gordon v. Eans.

2. **Practice in Supreme Court:** VERDICT: EVIDENCE. Where there is ample evidence tending to support the verdict of a jury, it will not be disturbed by the supreme court.

3. **Ante-Nuptial Contract:** HUSBAND TRUSTEE FOR WIFE. Where an ante-nuptial contract excludes the marital rights of the husband the law constitutes him a trustee for his wife. His possession is her possession, and, like any other trustee, he can reap no benefit to himself by the use of the property or acquire title thereto by investing the same or its proceeds in his own name without the assent of the wife.

4. ———— : ———— : BURDEN OF PROOF. The use of the property by the husband and the investing of the same in his own name is not a disposition of the property by the wife in favor of the husband, within the meaning of the marriage contract, unless it appears that it was done with the assent of the wife. In such case, the burden of proving the assent of the wife rests upon the party alleging the same and seeking the benefit thereof.

5. ———— : LEGAL TITLE : EQUITY. The common law rule is that notwithstanding a marriage contract may, by its terms, exclude the husband's marital rights in the wife's separate estate, still the technical legal title thereto vests in the husband during coverture ; but in equity, he holds not as husband, but as her trustee and upon his death, his marital and fiduciary relations, rights and powers over the same terminate, and the property, thus emancipated, goes at once to the wife and not to his administrator or heir.

6. **Limitation :** ADVERSE POSSESSION : PRIVITY. When a party is in possession of property in privity with the rightful owner, nothing short of an open and explicit disavowal and disclaim of a holding under that title, and assertion of title, in himself, brought home to the owner, will satisfy the law or lay a foundation for the operation of the statute of limitations.

7. **Appellate Practice:** HARMLESS ERROR. The supreme court is forbidden to reverse a judgment unless it appears that error was committed materially affecting the merits of the action to the prejudice of appellant.

8. **Practice :** INSTRUCTION. Where an administrator, in a proceeding to discover assets of the estate, shows himself entitled to a watch in possession of defendant, a finding for the latter on the whole case will not for that reason be set aside where the court was not asked to specifically instruct the jury as to the title to the watch, and its attention was not called to the matter in the motion for new trial.

*Appeal from Cole Circuit Court.*—Trial before HON.
NOAH M. GIVAN,. Judge of the Seventh
Judicial Circuit.

AFFIRMED.

*Edwin Silver* and *A. M. Hough* for appellant.

(1) Separate money of the wife paid to the husband
or placed to his account by her authority or with her
concurrence cannot be recalled by her.    Smith's Equity
( Am. Ed.) sec. 855 ; *Caton v. Rideout,* 1 M. & G. 599 ;
*Gardner v. Gardner,* 1 Giff. 126 ; *Ridout v. Lewis,* 1
Atk. 266 ; *Jacobs v. Hesler,* 113 Mass. 157 ; *Shirley v.
Shirley,* 9 Paige, 363 ; *Edelin v. Edelin,* 11 Md. 415 ;
*Grover v. Radcliff,* 53 Md. 496 ; *Courtwright v. Court-
wright,* 53 Ia. 57 ; *McGlinsey v. McGlinsey,* 14 S. & R.
( Pa.) 64 ; *Roper v. Roper,* 29 Ala. 247 ; *Church v.
Jacques,* 17 Johns. 549, reversing 1 Johns. Ch. 449 ;
Perry on Trusts, sec. 666.    (2) Where money, which is
the separate estate of the wife, is placed by her
in her husband's hands and afterwards used by him in
business, no presumption arises that he received it in
trust for her, and in the absence of proof to that effect
the money must be deemed to have been given him with
the intention that it should be applied to the use or ben-
efit of either or both of them at his discretion.    *Jacobs
v. Hesler,* 113 Mass. 157 ; *Woods v. Brown,* 121 Mass.
138 ; *Gardner v. Gardner,* 1 Giff. 126.    (3) There is no
distinction in the application of the above principles
between the income arising from the wife's separate
estate and the *corpus* of such estate.    *Gardner v. Gard-
ner, supra ; Church v. Jacques,* 17 Johns. 576 ; Smith's
Eq. ( Am. Ed.) sec. 855.    (4) Respondent in this case,
according to her theory of the same, is seeking in the
probate court to follow an alleged trust fund through
its various transformations during a long series of years.
This she cannot do.    The probate court has no jurisdic-
tion of such matters of purely equitable cognizance.

*Butler v. Lawson*, 72 Mo. 227; *Church v. Robberson*, 71 Mo. 249. (5) The administrator was clearly entitled to judgment for the delivery of the deeds which were title papers of W. H. Eans' real estate; and also for the watch which he brought into coverture and which he still possessed at his death.

*W. S. Pope* also for appellant.

(1) The rights of defendant, if any she had, could only be settled by a suit in equity, brought by her to charge the property in Eans' name as a trust fund. The property must be delivered to Eans' administrator, to be administered upon. (2) The second instruction asked by the plaintiff and refused was correct and should have been given. *Roper v. Roper*, 29 Ala. 247, and cas. cit.; Hill on Trustees ( 2 Am. Ed.) 425; Chancey on Husband and Wife, 354; *Coats v. Robinson*, 10 Mo. 759, and cas. cit. (3) Instructions numbered five and six were erroneously refused. The statute of limitations will run against a married woman about matters pertaining to her separate estate the same as against an unmarried woman. She labors under no disabilities so far as her separate property is concerned. She can sue her husband for misusing, misappropriating or depriving her of the use, occupancy, enjoyment or possession. *Roper v. Roper*, 29 Ala. 247.

*Smith & Krauthoff* and *Edwards & Davison* for respondent.

( 1 ) Any provision in an ante-nuptial contract negativing or excluding the marital rights of the husband creates a separate estate. *Morrison v. Thistle*, 67 Mo. 596; *Boal, Adm'r, v. Morgner*, 46 Mo. 48; *Tennison v. Tennison*, 46 Mo. 77; *Clark v. Maguire*, 16 Mo. 302. When by the terms of an ante-nuptial contract, the wife is to enjoy her separate property, the legal title to it still vests in the husband at law, but in equity he is her trustee and he must account to her therefor. 2 Bish.

Mar. Wom. sec. 116; *Blanchard v. Blood*, 2 Barb. 352; *Strong v. Skinner*, 4 Barb. 546; *Morey v. Michael*, 18 Md. 227; *Gover v. Owings*, 16 Md. 201. When property is settled on a married woman, before or after marriage, for her separate use, the intention of parties will be effectuated in equity and the wife's interest protected against marital rights of husband. The husband will be held a trustee and the trust will attach upon him and be enforced in the same manner that it would if he were a stranger. 2 Story Eq., sec. 1380; *Blanchard v. Blood*, 2 Barb. 352; *Baldwin v. Carter*, 17 Conn. 201. If property is purchased with the money of one, and title taken in another, equity will hold the person in whose name the title is taken as trustee for the other. 2 Story Eq., secs. 1210, 1201. And the rule is the same where the parties are husband and wife. If the husband purchase property with means derived from the separate estate of the wife, she will be deemed the equitable owner thereof. *Barron v. Barron*, 24 Vt. 375, 390; *Brooks v. Dent*, 1 Md. Ch. 523–7; *Dickinson v. Codwise*, 1 Sandf. Ch. 214; *Pritchard v. Wallace*, 4 Sneed, 405; *Pinney v. Fellow*, 15 Vt. 525, 538; *Tillmann v. Divers*, 31 Pa. St. 429; Adams Eq., [Shars. Ed.] 112, note; *Seaman v. Cook*, 14 Ill. 501; *Lathrop v. Gilbert*, 2 Stockt. Ch. [N. J.] 344–6; *Gover v. Owings*, 16 Md. 91, 99; *Walker v. Walker*, 25 Mo. 367, 375. (2) There was no error in the giving or refusing of instructions. (3) The jurisdiction of the court over the subject-matter of this suit is settled by the decision in *Eans' Adm'r v. Eans*, 79 Mo. 65.

*Edwin Silver* and *A. M. Hough* for appellant, on rehearing.

The supreme courts of Arkansas and Maryland have passed on statutory provisions like the one involved here and decided against the jurisdiction of the probate

court. *Moss v. Sanfelder*, 15 Ark. 381 ; *Taylor v. Bruscup*, 27 Md. 219. See also, *Homer's Appeal*, 35 Conn. 113.

*J. L. Smith*, *L. C. Krauthoff* and *Edwards & Davison* for respondent, on rehearing.

In any case under a statute providing for either the discovery and recovery, or for the discovery alone of the property of a deceased, the ownership of the property must constitute a leading and fundamental inquiry. If the unqualified ownership and title to the property is in the accused, then there is no wrongful conversion or embezzlement of the same—and this defence must be within the jurisdiction of the probate court. *Miller v. Woodward*, 8 Mo. 125 ; *Dameron v. Dameron*, 19 Mo. 317 ; *Howell v. Howell*, 37 Mo. 124 ; *Stewart v. Glenn's Adm'r*, 58 Mo. 481 ; *Overton v. McFarland*, 15 Mo. 313 ; *Powers v. Blakely's Adm'r*, 16 Mo. 441 ; *Hook, Adm'r, v. Dyer*, 47 Mo. 215. ( 2 ) Probate courts are a branch of the state judiciary exercising a jurisdiction originally found in the chancery and ecclesiastical courts of England and conferred here by statutes upon these courts. *Mellier v. Iron County*, 29 Mo. 122 ; *Miller v. Woodward*, 8 Mo. 169 ; *Titterington v. Hooper*, 58 Mo. 593 ; *Plaice v. Calhoun*, 59 Mo. 271 ; *Jackson v. Jackson*, 4 Mo. 210 ; *Ensworth v. Curd*, 68 Mo. 282 ; *Eans' Adm'r v. Eans*, 79 Mo. 64.

RAY, J.—This was a proceeding commenced in the probate court under sections 7, 10 and 11, W. S., p. 85, to discover and recover alleged assets of the estate of deceased. The case once before was in this court (*Eans' Adm'r v. Eans*, 79 Mo. 53 ), where it was held that the proceeding in question was available, not only in cases where the assets were concealed or embezzled, but also where they were openly held under claim of title ; and that in the latter case the court must try the right of property between the administrator and the claimant.

The circuit court on appeal, having dismissed the proceeding for want of jurisdiction in the probate court, its judgment in that behalf, when here before, was reversed and the cause remanded for further proceedings in conformity to the opinion then rendered.

The facts of the case and the contention of the parties fully appear in 79 Mo. *supra*, to which reference is here had and need not again be re-stated at large ; and on a re-trial, as shown by the record, the facts of the case and the contention of the parties are substantially the same as when here before. In the course of that opinion, the court use this language : " In the case at bar, the question between the administrator and the defendant was as to the ownership of the property in controversy. The plaintiff, on the one hand, claimed that permitting the husband to sell said property; receive the money therefor and use the same in his business during the period of time and in the manner indicated by the facts in evidence, was of itself, an appointment and disposition of the property by the wife in favor of the husband, within the meaning of the marriage contract itself. The defendant, on the other hand, denies this position and insists that where there is a marriage contract like this between husband and wife, and no trustee is appointed by the instrument itself, the law makes the husband trustee for the wife and like any other trustee, the husband can reap no benefit to himself by the use of the property ; or acquire title thereto by investing the same or its proceeds in his own name without her assent thereto and therefor, and that in point of fact she made no such appointment or disposition, and the property and its proceeds are still rightfully hers. Whether the property has been thus appointed or disposed of, or still remains the separate property of the wife as contemplated by the marriage contract, is at most a question of intent and fact, to be found by the jury or the court, accordingly as the same is tried under

all the facts and circumstances in evidence, in connection with the marriage contract itself."

The court then proceeds to decide in that opinion, that the probate court had jurisdiction to hear and determine the cause in the summary manner pointed out; that it was error in the circuit court on appeal, to dismiss the complaint for want of jurisdiction; and that it should have proceeded to hear and decide the question under proper instructions or declarations of law, applicable to the case made by the facts as they shall appear in evidence at the trial.

It thus appears that when the case was here before, the court virtually made two rulings in the case: one, upon elaborate consideration, to the effect that the probate court had jurisdiction to hear and try the cause; and the other, to the effect that it was a question of *intent and fact* to be found by the jury, under proper instructions upon all the evidence, whether the property had been thus appointed or disposed of by the wife in favor of the husband, as contended by the administrator; or whether it was still the "separate property" of the wife as contemplated by the marriage contract and claimed by the defendant. For these reasons and for that purpose, the judgment was reversed and the cause remanded for further proceedings in conformity to that opinion.

Upon a re-trial, as shown by the record, the facts of the case and the contentions of the parties, with unimportant variations, were substantially the same as when the case was here before and the ruling of the court on the first point, as to the jurisdiction of the probate court, when the case was here before, must now be taken and held, so far at least, as this case is concerned, as the law of the case.

As to the second point, as shown by the record, the contemplated re-trial has been had and the question of *intent and fact* has been found by the verdict of a jury in favor of the defendant, upon substantially the same

Gordon v. Eans.

state of facts and the same contention of the parties as when the case was here before, with only such variations and unimportant exceptions to be hereafter noticed, under the following instructions, and it only remains to be determined, except as hereinafter stated in that behalf, whether those instructions properly and fairly submitted that question to the jury. Those instructions are as follows :

For the plaintiff, the court gave the following :

"1. The court instructs the jury that if they believe, from the evidence in the case, the goods, chattels, money, papers, and evidence of debts mentioned in the evidence, and in controversy in this case, belonged to Wm. H. Eans at the time of his death, and are a part of his estate, and that defendant has them in her possession or under her control, they will find the issue for the plaintiff."

The court of its own motion gave the following :

"2. The court instructs the jury that, although the marriage contract read in evidence, reserves to defendant a separate estate in the property described in the contract and in the increase and proceeds thereof, still that under the law, the defendant had full power and right to give said property, its increase, proceeds, or the money arising from its sale to Wm. H. Eans, and had the power and right to permit him to appropriate the same as his own, and, therefore, if the jury believe, from the evidence in the case, that the property described in said marriage contract was sold by defendant and Wm. H. Eans jointly, or by the latter with defendant's knowledge and acquiescence, and that said Wm. H. Eans did receive and appropriate the money or moneys arising from said sales with the knowledge and concurrence of defendant, and with the intent on her part that the same should become his property, then the defendant is not entitled to have or recover the same and the jury will so find.

" 3.   The court instructs the jury that if they believe from the evidence in the case, that the property and money owned and held by the defendant in her own name at the time of her marriage with Eans, and charged to her sole and separate use by an ante-nuptial contract, was sold and disposed of with the assent of the defendant, and with her consent invested and re-invested in other property in the name of W. H. Eans, with intent on the part of the defendant that the same should become his property, and was so held and invested in his name at the time of his death, then they will find this issue for the plaintiff.

"4.   If the jury believe  from the evidence that the original estate mentioned in the marriage contract, with its increase, rents and profits, was lost in the emancipation of slaves,  the burning of the mill referred to in the evidence and in other business adventures, and that the property in controversy is a new estate, created alone by the exertion of Wm. H. Eans, or by said Eans and wife after their marriage, then the jury will find the issues for the plaintiff.

" 5.   The court instructs the jury, that in determining the question whether defendant permitted Wm. H. Eans to receive and appropriate the property and money in controversy, with the intent for him to have it as his own, the jury should take into consideration all the facts and circumstances in evidence, including the acts and conduct of said Eans and defendant in and about said property.

" 6.   The court instructs the jury that in order to find for the plaintiff, it is not necessary for them to believe or find defendant guilty of embezzlement, but simply that she is wrongfully withholding property belonging to the estate of Wm. H. Eans."

To which the plaintiff at the time excepted.   The court also gave the following instructions on the request of defendant, to which the plaintiff also excepted:

" 4.    The jury are instructed that the legal effect of the ante-nuptial contract in evidence was to preclude the marital rights of William H. Eans from attaching to the property described in said contract, its increase, income, profits, rents, interest and proceeds, or any other property acquired with the proceeds of said property, or into which the same was converted, and the fact that she permitted said Eans to put such property in his own name, and to handle and use the same, did not make said Eans the owner thereof, unless at the time she did so, she intended to give said property to said Eans, and to make him the owner thereof, and the burden of proving such intention is upon the plaintiff.

" 6.    Before the jury can find for the plaintiff, they must be satisfied by a preponderance of the evidence that after the making of the marriage contract and contracting the marriage between Wm. H. Eans and the defendant, Wm. H. Eans took possession of the said property, claiming the same as his own, and denying the rights of the defendant under said contract, and that Mrs. Eans had actual knowledge of such claim and denial, and consented and agreed to such claim and denial on the part of Eans, and intended that Eans should be, thereafter, the sole owner of said property, and that she should release her rights under said marriage contract.

" 8.    Although Mrs. Eans may have permitted Wm. H. Eans to take possession of the property she had at the time of their marriage, and to use, sell and dispose of the same and to invest the proceeds thereof, and to do business with the same in his own name, yet, unless this was done with the understanding and intention, on the part of Mrs. Eans, that Wm. H. Eans should become the owner of said property, and that she should thereafter have no other or further rights under said marriage contract, the jury must find for the defendant.

" 9.    The jury are instructed that this is not a suit

to recover the value of services rendered by Eans in caring for the property of his wife, or in managing her interests, and they cannot, in this proceeding, find for the plaintiff for such services.

"$9\frac{1}{2}$. Although part of the property described in the marriage contract was destroyed or lost, yet if the property now sued for consist of increase, income, proceeds, profits, or interest of any part of said original property into which the same was converted by sale or otherwise, such destruction or loss alone will not authorize the plaintiff to recover."

The plaintiff's instructions asked and refused (except those in reference to the statute of limitations, to be noticed hereafter) were either supplied by or contradictory to those given in the case and need not be further noticed.

An inspection of the instructions thus given shows that they are explicitly directed, almost solely and exclusively, to the question of "*intent and fact*," mentioned in the former opinion on that subject, and in our opinion they fairly and properly submitted that question to the jury. That manifestly is the controlling question in the case. The jury found the issue thus presented for the defendant. That there was ample evidence tending to support their verdict, there can be no question. In such cases our uniform rule is not to disturb the verdict so found.

If the rule contended for by plaintiff's counsel, both at the former and the latter trial, and here insisted on in his brief, is to prevail in cases like the present, the marriage contract intended to exclude the marital rights of the husband and preserve the property with its increase and proceeds to the wife, from the control, possession or misappropriation by the husband, would become a snare and a fraud and operate to defeat the express object of its creation and execution. By law, in such cases, the husband is constituted trustee for the

wife, and as such usually and properly manages and controls her property. In such cases, his possession is her possession, and like any other trustee, he can reap no benefit to himself by the use of the property; or acquire title thereto by investing the same or its proceeds in his own name without the assent of the wife thereto and therefor. Why should he? Manifestly, such use and investment of property, *of itself*, and without more, is not, as claimed by plaintiff, an appointment or disposal of the property within the meaning of the marriage contract, unless it further appears that it was so done with the assent of the wife and for that purpose. Why should or how can the wife be divested of her property, without her intent so to part with it. In such cases the burden of proving that fact rests with the party alleging the same and seeking the benefit thereof. This is the fair import of the instructions and we think the question at issue was thereby fairly and properly submitted to the jury, and their decision is and ought to be conclusive upon us. These positions are, we think, abundantly sustained by the numerous authorities cited in brief of defendant's counsel, among which may be cited the following: 2 Perry on Trusts, secs. 666, 664, 652; *Gover v. Owings*, 16 Md. 91, 99; 2 Bish. Mar. Wom., secs. 116, 132; *Blanchard v. Blood*, 2 Barb. 352; *Strong v. Skinner*, 4 Barb. 546; *Baldwin v. Carter*, 17 Conn. 201; 2 Kent, 162; *Hook v. Dyer*, 47 Mo. 214, 218, 219; *Bank v. Lee*, 13 Peters, 107-118; *Crenshaw v. Anthony*, Martin & Yerger, (4 Tenn.) 110; and *Murray v. Fox*, 11 Mo. 556, 563, 564, 565.

In the latter case of *Murray v. Fox*, 11 Mo. 556, (s. p.) at pp. 563-4-5, there is much in common with the case at bar, as to the facts and conduct of the wife and husband in reference to the trust property, and also as to the contentions of the parties to that suit and this, as well as in the rulings and reasoning of the court in that case, and in the one at bar; (except that in that case, the

contest was between the *creditor* of the husband and the wife, while in this the controversy is virtually and practically between the *heir* of the husband and his widow.) The language of the case of the *Bank v. Lee*, 13 Peters, 107-118, and also that of the Tennessee court in the case of *Crenshaw v. Anthony*, Martin & Yerger, 110, approvingly quoted in the case of *Murray v. Fox, supra*, is also worthy of consideration as applicable, to a great extent, to the case at bar.

The concluding remark of the court, in the case of *Murray v. Fox, supra*, is striking, and to the effect that if the *harsh* rule contended for shall prevail, the wife must either abandon her property to save her husband, or abandon her husband to save her property ; and then adds that "such doctrine cannot receive the sanction of any judicial tribunal in this land."

The noticeable differences between the record now before us and when here before, are as follows : · In the former, it affirmatively appeared that the estate owed no debts remaining unpaid ; that the widow had paid the debts. In the present there is no *express* testimony on that point, but it is apparent, we think, from the entire record that that fact was taken for granted. The plaintiff is the administrator, the son-in-law of the intestate's husband, and a witness in the cause, but nowhere in his testimony does he say, or pretend that there were any unpaid debts or creditors ; and the record nowhere or in any manner shows or intimates any such thing. No allowances against the estate anywhere appear, although the time for presenting the same was long past ; from all which, it is, we think, fair to presume that no debts or creditors exist, and that this contract is a struggle solely between the heir of the husband and his widow and exclusively for the property of the wife mentioned in the marriage contract and its proceeds.

The former record, while it showed that the wife had

knowledge that the husband was conducting and managing all the business operations in his own name, yet it failed to show any *express* assent or dissent on her part, to this mode of managing and conducting the same. Nor did it show any *express* claim by the husband that the property in question was his and not that of the wife. On these points the present record shows that the wife in her testimony used this language: "I never intended to give Mr. Eans my property. I expected to hold it as my own. He did not ask it; he did not claim it. * * * It was never my intention to give Eans the property. I did not know how the deeds were made. Mr. Eans never claimed the property was his in my presence." On the other hand, the plaintiff Gordon in his evidence uses this language: "Eans exercised full control over everything during the marriage and claimed all the property as his own. Eans never did business in any other name here than his own." W. H. Short, at the close of all the evidence, being recalled by the plaintiff, testified: "The understanding with me was that all the property was W. H. Eans'; he called it his." This is all the *express* evidence in the present record on that point. But neither the plaintiff Gordon, nor the witness, Short, said or pretended that this claim of the husband was brought home to the knowledge of the defendant. These differences we think do not in the slightest change the character of the controversy, then and now; or the principles of law by which it should be decided. The case made by both records, in all material aspects, is substantially the same.

The common-law rule, well established by the authorities already cited, is, as heretofore indicated, to the effect that, notwithstanding the marriage contract may by its terms exclude the husband's marital rights to the wife's separate estate, still the technical legal title thereto vests in the husband during coverture; but that in

equity he holds it not as husband, but as her trustee; and that upon his death, by operation of law, his marital and fiduciary relations, rights and powers over the same terminate and the property thus emancipated goes at once to the wife and not to his administrator or heir. 2 Bish. Married Women, sec. 116 ; 2 Barb. 352. The marital common law, as we have seen, would have vested the technical legal title to the promissory notes, certificates of bank deposits and bank stock, accounts and the like in the husband, whether taken in the name of the wife or husband ; and the act of the husband, in taking them in his own name, could do nothing more or change the rule of law in that behalf. In either case, as we have seen, the husband is but the trustee for the wife and under the law can take no benefit to himself or acquire any title to the trust estate, hostile to his wife, the beneficiary in the trust. *Grumley v. Webb*, 44 Mo. 444 ; *Rea v. Copelin*, 47 Mo. 76 ; *Hook v. Dyer*, 47 Mo. 214 ; 16 Mo. 302 ; 9 Mo. 772. This case is distinguishable in an important particular from that of *Hook v. Dyer*, 47 Mo. 214, 218, 219. In the latter case, Mrs. Dyer, while trustee for others, was also one of the beneficiaries in the trust estate. In the case at bar, the husband, so far as the trust property was concerned, which is really the object of the suit, was, in legal contemplation, a dry trustee, with no beneficial interest in the property mentioned in the marriage contract and from which he was thereby expressly excluded from all beneficial interest.

Plaintiff's refused instructions, designed to show title by limitation and for the refusal of which error is assigned, are as follows :

"5. If the jury believe from the evidence that said Wm. H. Eans was in the open and notorious possession of the property in controversy, claiming it as his own for more than five years next before his death, they will find the issue for the plaintiff.

"6. If the jury believe from the evidence that said W. H. Eans was in the open and notorious possession of the property in controversy, claiming it as his own, for more than ten years next before his death, then they will find the issue for the plaintiff."

These instructions are clearly inapplicable to the facts in evidence. They omit all reference to the fiduciary relations existing between the husband and wife, to the conceded fact that he was her trustee in reference to said property, and that his possession in its origin was friendly and in subordination to her title as the true owner; or that his alleged adverse claim and holding was in any manner clearly and distinctly brought home to her notice. For these reasons, if for no other, they were properly refused. The rule in all such cases is to the effect "that when a party is in possession of property in privity with the rightful owner, nothing short of an open and explicit disavowal and disclaim of a holding under that title and assertion of title in himself, brought home to the owner, will satisfy the law or lay a foundation for the operation of the statute of limitations." *Hamilton v. Boggess*, 63 Mo. 233; *Budd v. Collins*, 69 Mo. 129, 139; *Wilkerson v. Thompson*, 82 Mo. 317; Tyler on Eject., p. 876, and other cases cited in brief of defendant's counsel.

It is said the trial court erred also in refusing to permit plaintiff to file certain written interrogatories. The offer does not appear to have been in proper time, and even if it had, the error, if such it was, was not such as to warrant a reversal; especially as the plaintiff thereupon proceeded to examine and question the defendant on oath, touching all the matters and things contained in said interrogatories. It does not appear that any error was thereby committed materially affecting the merits of the action to the prejudice of plaintiff. Unless that appears, we are not authorized to reverse for that reason. R. S. 1879, sec. 3775.

It only remains to consider plaintiff's eighth instruction, and in that connection, the title deeds to the realty and the husband's watch. The eighth instruction is as follows:

"8. The court instructs the jury that on the pleading and evidence they should find for the plaintiff."

Of the title deeds, it is sufficient to say that as they pertain to the realty, which under the facts of this case is in no way within the scope of this proceeding or affected thereby, it is not apparent how the ruling as to the title deeds materially affected the merits of the action to plaintiff's prejudice. As to the husband's watch, conceding it to be his, as the evidence shows, this objection, under the circumstances, has the appearance of an afterthought. In no fair or just sense can it be said to have been the subject-matter of the suit. It is not mentioned in the complaint, in any of the instructions asked or refused, nor in the motion for a new trial; and it is manifest from the entire record and contention of the parties that the real subject-matter of the suit was to recover the *separate estate of the wife* reserved to her by the ante-nuptial marriage contract, and its proceeds, but claimed by the plaintiff, at every stage of the proceedings, to have become the absolute property of the husband, by reason of the alleged conduct and course of dealing of the husband and wife in reference thereto. This is the burden of the whole proceeding. But, as a last resort, it is insisted in this court, for the first time, that the administrator was certainly entitled to judgment for delivery of the watch of the husband, and that the court therefore erred in refusing to direct a finding for the administrator as requested in instruction numbered eight. Instruction numbered eight, as asked, manifestly contemplated that the jury should find for plaintiff as to the whole case. If the plaintiff, at the time, really intended and sought

a recovery of the husband's watch, by instruction eight, why did he not specifically call the court's attention to the watch by name, and ask that, as to it at least, the plaintiff was entitled to a recovery? If that was what he really meant and he had so informed the court, it doubtless would have so directed. It does not appear, however, that that question was ever passed upon by the trial court by said instruction eight, or otherwise, and if it had been, the court's attention should have · again been called to it by the motion for new trial. But this was not done. There is manifestly no merit in the objection and no error in the record on that account.

Finding no error in the record, the judgment of the trial court is therefore affirmed, in which NORTON, C. J., and BLACK, J., concur. SHERWOOD, J., dissents. BRACE, J., expressing his views separately.

### SEPARATE OPINION.

¡BRACE, J.—I cannot concur in so much of the foregoing opinion as sanctions the doctrine that, in this proceeding, under sections 7, 10 and 11, Wagner's Statutes, page 85, the probate court had jurisdiction to try and determine the right of the administrator and the defendant in the property in controversy openly held and claimed by her under color of right as her separate estate.

### On rehearing.

RAY, C. J.—This case is before us for the third time ; in the present instance, on motion for rehearing, which was sustained, as to the *question of jurisdiction only.*

The case was originally commenced in the county court, which at that date had probate jurisdiction, under sections 7, 10 and 11, of the second article of the administration law ( 1 Wag. Stat., p. 85 ), where plaintiff had

judgment, from which defendant appealed to the circuit court, where, upon a trial *de novo*, the proceeding was dismissed for want of jurisdiction, from which the plaintiff appealed to this court, where the judgment of the circuit court was reversed and the cause remanded for a re-trial, with directions. *Eans' Adm'r v. Eans*, 79 Mo. 53.

There seems to be considerable *misapprehension* as to the scope and meaning of that opinion; as to what it has or has not decided, or attempted to decide, owing, doubtless, in part, to the want of careful attention and consideration of the peculiar facts, as shown by the evidence of the case; the instruction given at the instance of defendant, as well as that given by the court on its motion; and also in part to the want of accuracy and clearness in some of the language used by the court, as well as the use of somewhat inaccurate, unadvised and misleading terms, in some parts of said opinion, relative to the openness and notoriety of defendant's claim and possession of the property in dispute.

As to the facts of the case : There is no question as to the death of defendant's husband, the appointment of his administrator, and that, at and prior to the time of his death, he had been actively engaged in merchandising and other business operations conducted in his own name, at Russellville, and at the time of his death, was at least in the apparent possession and ownership, among other things, of a stock of goods, chattels, money, promissory notes, accounts, certificates of deposit, issued by the National Exchange Bank of Jefferson City, Missouri, and the First National Bank of Jefferson City, Missouri, certificates of shares of stock in a certain bank, deeds of trust, securing promissory notes, etc., and title deeds to real estate, etc., all of which were, *on their face*, payable to or in the name of said deceased. All this property, *thus evidenced*,

it is conceded, on the death of the husband, came into the possession and control of the defendant, his widow, and so remained at the time of filing said affidavit by the administrator under said section 7 of the statute, and also at the time of the trial before the county court, and also at the subsequent trial *de novo* in the circuit court, and that she openly held the same under claim or color of title thereto.  There was no pretense of any "*concealment*" of the property on her part, within the meaning of said section 7, of the statute, and the only question was one of "*embezzlement*" of the property in question by the defendant, within the meaning of the statute in question.

Such was the condition of things when the defendant was brought before the probate court, and subsequently before the circuit court, to answer said charge of embezzlement by the said administrator, and the circuit court gave, at defendant's request, the following instruction:

"4.  It is necessary, in this case, for the plaintiff to prove that the defendant has embezzled or concealed the property of W. H. Eans, deceased, charged in the affidavit, and an open and notorious possession of the property, under claim of ownership, is neither embezzlement nor concealment, within the meaning of the law, and if the court believes, from the evidence, that defendant is in the open and notorious possession of the property named in the affidavit under claim of ownership, then the county court has no jurisdiction, and the complaint ought to be dismissed."

The court, of its own motion, also gave the following additional declaration of law:

"If the court finds, from the evidence, that the property alleged by the plaintiff to be concealed and embezzled by the defendant, Mrs. Eans, is held by her under claim or color of right, as her separate estate, and that to settle the respective rights of the administrator and the defendant to the property, an action at

law or suit in equity is necessary, then the county court, as a probate court, had no jurisdiction to entertain this proceeding, and the complaint ought to be dismissed."

And thereupon, the court accordingly *refused to try the cause*, and dismissed the complaint for want of jurisdiction, from which the plaintiff appealed to this court, where the court on the first appeal rendered the opinion (79 Mo. *supra*), which, as well as that rendered on the second appeal, is here complained of for want of jurisdiction in said probate court. Is that complaint, under the admitted facts of the case, and the rulings of the trial court, when carefully considered, well founded ? It seems to me, clearly not. When, carefully considered, the undisputed facts and *face of the papers themselves*, make out, at least, a *prima-facie* case of embezzlement against the defendant, which the trial court could not ignore upon the simple claim of title and open possession of the property by the defendant, without some further inquiry as to its good faith and validity.

Such a claim on her part, without more, it seems to me, under the *prima-facie* case thus made by the admitted facts themselves, could not justify the probate court in refusing to try the case, for the sole purpose of ascertaining her guilt or innocence of the embezzlement charged, and dismissing the complaint as it did ; nor could such a claim, of itself, deprive the court of its jurisdiction and duty, for the purpose aforesaid, to hear and try whether her said claim was in fact in good faith and well founded, or a mere pretense. If it could, all that a defendant, when brought before the court to answer such a charge, would have to do would be simply to interpose a claim of title and open possession, and thereby deprive the court of all jurisdiction to inquire into its truthfulness or validity for the purpose aforesaid. Such, manifestly, is not the law. And that,

when carefully examined, is just what the trial court did in this instance, and nothing more.

Under the last of the instructions heretofore set forth, the court *manifestly* held, that if the property alleged to be concealed and embezzled by defendant, is held by her under claim or color of right as her separate property, and that to settle the respective rights of the administrator and defendant to said property, an action of law or suit in equity is necessary, then the court has no jurisdiction to entertain this proceeding, and the complaint ought to be dismissed.

It is not very clear exactly what the court meant by this instruction, but if it means (as it appears to mean), "that if an independent action at law or suit in equity is necessary to settle the respective rights of the administrator and defendant to the property in question," then the probate court has no jurisdiction to entertain the proceeding in question, then the instruction is misleading and erroneous, for that was not the question before it. The sole question was, was the defendant guilty of embezzlement; that is, had she "*fraudulently* appropriated to her own use, money or property entrusted to her care by another." Bouvier's Law Dict., page 586 ; Webster's Dict., page 439.

This proceeding, it must be remembered, is *quasi-*criminal in its nature ; its object and purpose being to discover and compel the surrender of property, so fraudulently misappropriated, to the party having a right thereto. If it appears that the plaintiff's intestate had no title to the property, its embezzlement is no concern of his, and he has no right to ask or compel its surrender by defendant, and the court, in that case, should find for defendant. Or if it appears that defendant's appropriation of the property to her own use is not *fraudulent,* but in good faith, under claim of valid title thereto, then she should be acquitted of the embezzlement charged and should not be compelled to surrender

the property to plaintiff, and the finding should be for defendant. This was the controlling and *only question* before the probate court, or the circuit court on appeal *de novo.*

It makes no difference, in such case, whether "an action at law or suit in equity," might be necessary to settle the respective rights of the administrator and defendant in case either of them was suing the party in possession of the bank deposits, the party making the promissory note, or the party holding the technical legal title to the real estate, or the like. That is not this case, nor the object of this *quasi*-criminal proceeding. The real and *only* questions before the court, under these proceedings, are whether the deceased had title to the property, and whether the defendant was guilty of embezzlement, or had *fraudulently* misappropriated the same to her own use, or held the same in good faith upon a valid right or title thereto. These were the only questions properly involved in this proceeding in the court below, and these are the only questions actually decided, or attempted to be decided, by this court, when the case was here for review on first appeal.

The cause was accordingly re-tried, and there was a finding and judgment for the defendant under certain instructions there set out, from which the plaintiff again appealed to this court, and the only question before the court on the second appeal, was whether those instructions, so set out, properly and fairly submitted that question to the jury. On this point, the court, in its opinion on the second appeal, now under review, uses this language: "An inspection of the instructions thus given shows that they are explicitly directed, almost solely and exclusively, to the question of *intent and fact* mentioned in the former opinion on that subject, and in our opinion, they fairly and properly submitted that question to the jury." And for

that reason, the judgment of the court on the second trial was affirmed accordingly on the second appeal.

It thus appears that the question of *jurisdiction* was not discussed in the second opinion, and was therein only referred to by way of attempt to re-state, in somewhat inaccurate and perhaps misleading terms, what was held on that subject in the first opinion, and also what was said in reference to the nature of this contest and struggle between these parties, etc. In the latter opinion, the question of jurisdiction was assumed to be settled by what was said in the first opinion, and there was no attempt to re-argue that question.

A careful examination of the opinion on first appeal (79 Mo. 53, *supra*), will show that the case was there made to turn upon the question of *jurisdiction* in the probate court, and that question, in its turn, was also made to turn upon the question of the *ownership* of the property in dispute, and that the only purpose of inquiry into these matters, by the probate court, was to *determine* whether the defendant was guilty of *embezzlement* within the meaning of section 7 of the statute, *supra*, and if so, to compel the surrender of the property, if still in her possession or control, to the administrator for the purpose of administering said estate. This was the only legitimate object of those proceedings, and this the sole legitimate purpose of the defense made by the defendant thereto.

It is perfectly manifest that the proceeding and the defense thereto, was neither an "action at law or suit in equity * * * to settle the respective rights of the administrator and the defendant to the property," as contemplated by the circuit court, in the instruction given on its own motion; and it is equally manifest, that if it had been, then, in that event, the probate court would have had no jurisdiction of the cause. For this purpose, it is conceded that the probate court had no jurisdiction, and that parties wishing to *litigate* and *enforce* their rights

to the bank certificates of deposit, certificates of bank stock, promissory notes, deeds of trust, real estate mentioned in the title deeds, money and other property thus outstanding, would have to resort for relief to jurisdictions *other* than the probate court. But that, as has been shown, is not this case.

A careful examination of the opinion, when the case was here on the first appeal (79 Mo. 53, *supra*), will verify these positions. In that case, pages 64, 65, the court, treating of proceedings under section 7 of the administration law in question, use this language : " In these proceedings, the question (of title) is necessarily averred in the affidavit, and when its allegations are denied, as in this case, necessarily involved in the issues to be tried. Without title in the intestate, the administrator clearly has no standing in court; and when the defendant is the real owner, he or she certainly ought to be allowed to show that fact to defeat a recovery or conviction. In the case at bar, the question between the administrator and the defendant was as to the ownership of the property in controversy. The plaintiff, on the one hand, claimed that, permitting the husband to sell said property, receive the money therefor, and use the same in his business during the period of time and in the manner indicated by the facts in evidence, was of itself, an appointment and disposition of the property by the wife in favor of the husband, within the meaning of the marriage contract itself. The defendant, on the other hand, denies this proposition, and insists that when there is a marriage contract like this, between husband and wife, and no trustee is appointed by the instrument itself, the law makes the husband trustee for the wife, and, like any other trustee, the husband can reap no benefit to himself by the use of the property ; or acquire title thereto by investing the same or its proceeds in his own name, without her assent thereto, and therefor, and that, in point of fact, she made no such appointment or disposition, and that the property and its proceeds are still

rightfully hers.   Whether the property has been thus appointed or disposed of, or still remains the separate property of the wife, as contemplated by the marriage contract, is, at most, a question of *intent and fact* to be found by the jury, or the court, accordingly as the same is tried, under all the facts and circumstances in evidence, in connection with the marriage contract itself. Under the statute in question, we think the probate court had jurisdiction to hear and decide these questions and others properly arising in the case, in the summary manner pointed out; and that it was error in the circuit court, on appeal, to dismiss the complaint for want of jurisdiction; and that it should have proceeded to hear and decide the question, under proper instructions or declarations of law, applicable to the case made by the facts as they shall appear in evidence at the trial." For these reasons, the judgment of the circuit court was reversed and the cause remanded, for further proceedings in conformity to the opinion then rendered.

The fault of the instruction given at defendant's request is that it makes the embezzlement with which she is charged in these proceedings, to depend on the openness and notoriety of her claim and possession of the property, rather than its good faith and validity. The error of the instruction given by the court on its own motion, is that it *misapprehends* the question at issue, on the trial of the embezzlement charged in these proceedings against the defendant, as well as the office and object of the *proposed inquiry* into the good faith and validity of her said claim of title to the property in dispute.   The only purpose and office of the proceedings in this case, was to try whether the defendant was guilty of the charge of embezzlement preferred against her, and if so, to compel its surrender.   Said proceeding, as heretofore said, was neither "an action at law or suit in equity" to settle and enforce the respective rights of the administrator and defendant to the property in dispute, as contemplated by said instruction; and if it had

been, as before said, it is conceded that the probate court would have had no jurisdiction to entertain such an action or suit. Besides that, the plaintiff will not now, at this late date, be heard to complain of the court's having done that which, all along heretofore, he has claimed it should have done.

For these reasons, the rulings of the court on first and second appeals on the question of jurisdiction, as herein explained and construed, as well as the affirmance of the judgment on re-trial, are adhered to, and it is accordingly so ordered. These proceedings and the rulings of the court thereon, we need scarcely add, are manifestly without prejudice to the rights of either party in any proper suit, brought or pending in any proper court, to enforce their respective claims; since it would then be the right and duty of such court to declare the correct legal principles applicable to such controversies and the facts of the case, as the same may appear in evidence at such trial. BLACK and BARCLAY, JJ., concur; BARCLAY, J., in the result. SHERWOOD and BRACE, JJ., concur specially and will give their views hereafter.

### SEPARATE OPINION.

BARCLAY, J.—To explain my concurrence in the result announced, it may be proper to add that, since this proceeding was begun in the probate court, the section of the administration law on which it rests has been amended. It now reads as follows: "Sec. 75. If the executor or administrator, or other person interested in any estate file an affidavit in the proper court, stating that the affiant has good cause to believe, and does believe, that any person has concealed or embezzled, *or is otherwise wrongfully withholding* any goods, chattels, moneys, books, papers or evidences of debt of the deceased, and has them in his possession or under his control, the court may cite such person to appear before

it and compel such appearance by attachment. Approved March 16, 1881."

The words in italics became the law in June, 1881. The rest of the section was in force for many years prior to the present controversy. Under the statute existing at the beginning of this litigation, the probate court acquired jurisdiction in such a case on the filing of the affidavit mentioned, but the court was bound to find in favor of defendant if it appeared that the property in question had been neither concealed nor embezzled. If on the hearing it were made to appear that defendant held the property openly under a *bona-fide* claim of title, the court could not properly enter judgment against her, whatever might be its conclusion regarding the true legal ownership of the property.

The last trial, however, of this cause occurred after the amendment of the law indicated above, whereby the probate court was invested with jurisdiction when there was a mere wrongful withholding of such property, as well as of cases of concealment and embezzlement. The party plaintiff in this proceeding saw fit, on the last hearing, to submit to the court the issue of such wrongful withholding, based on the question of actual title. The finding was in favor of defendant on that issue. At that time, the court, by virtue of the present law, had power to hear and determine such an issue. The defendant appeared, submitted it, and does not complain of it. If there was any informality in the mode plaintiff adopted to present it, that cannot now be a subject of just complaint on his part. A finding for defendant was undoubtedly correct under the law in force when the proceedings were begun, for the facts disclose no concealment or embezzlement on defendant's part. Such finding was, moreover, proper according to the law in force at the time it was made, under which plaintiff voluntarily ( though somewhat informally ) submitted the issue of ownership for decision. *Tippack v. Briant*, 63 Mo. 580.

Gordon v. Eans.

There is hence no sufficient basis for his present assertion of want of jurisdiction in the trial court. This was the only point reserved for consideration on this rehearing. The judgment should, for these reasons, be affirmed.

### SEPARATE OPINION.

SHERWOOD, J.—If the jurisdiction of the probate court remained as it was prior to the taking effect of the act of March, 16, 1881, then clearly said court had no jurisdiction to hear and determine any question except whether Mrs. Eans had embezzled the property in controversy. If, on the other hand, that court acquired, by reason of said act, an additional jurisdiction over the subject-matter of the action, by reason of the wrongful withholding of said property by Mrs. Eans, and the voluntary submission of the parties hereto to said additional jurisdiction, then it is equally clear that the action of that court, if there was evidence of such embezzlement or wrongful withholding, was final. It is, therefore, of no importance as to which theory of the case be adopted, as either is fatal to any further prosecution of any other suit in any other *forum*. If jurisdiction existed, that is the end of the matter. Hence, if this court affirms the jurisdiction of the probate court, it is simply futile to say that our action herein shall not prejudice any future and further assertion of rights by plaintiff in some other *forum*. I do not believe that the plea of *res judicata*, if it has a secure evidential foundation upon which to rest, can be foreclosed, precluded or cut off, by this court merely saying that the present ruling shall be without prejudice. I, therefore, concur specially, and for the reasons stated, in the foregoing, opinion. But I deny that the probate court acquired any jurisdiction in the premises. Our former decisions were plainly wrong, and the only way I know of to correct that wrong is to come out and plainly confess the error.