EANS' ADMINISTRATOR, *Appellant*, v. EANS.

| 79 | 53 |
|----|-----|
| 97 | 592 |
| 97 | 593 |
| 97 | 606 |
| 97 | 608 |
| 97 | 611 |
| 97 | 612 |

| 79 | 53 |
|----|-----|
| 52a | 667 |

| 79 | 53 |
|-----|-----|
| 116 | 151 |

| 79 | 53 |
|------|-----|
| s97 | 587 |
| 158 | 523 |

1. **Administration**: DISCOVERY OF ASSETS. The proceeding to discover assets of the estate of a decedent provided by sections 7, 8, 9, 10 and 11, page 85, Wagner's Statutes, is available not only in cases where the assets are concealed or embezzled, but also where they are openly held under a claim of title. In the latter case the court must try the right of property between the administrator and the claimant.

2. ———: WIDOW'S ALLOWANCE. If the widow of the deceased be the claimant, she should in no event be required to surrender to the administrator the property she is entitled under sections 33, 35 and 36, page 88, Wagner Statutes, to keep as her absolute property.

*Appeal from Cole Circuit Court.*—Trial before HENRY FLAN-
AGAN, ESQ., sitting as Special Judge.

REVERSED.

*Ewing, Pope & Hough* and *Belch & Silver* for appellant.

*Smith & Krauthoff* and *J. R. Edwards* for respondent.

RAY, J.—This is a proceeding begun in 1878, in the probate court of Cole county, by the administrator of the estate of Wm. H. Eans, against the widow of said Eans, to recover certain assets of the estate, and is based on the following sections of Wagner's Statutes, page 85:

Section 7. If the executor or administrator, or other person interested in any estate, file an affidavit in the proper court, stating that the affiant has good cause to believe and does believe, that any person has concealed or embezzled any goods, chattels, money, papers or evidences of debt of the deceased, and has them in his possession or under his

control, the court may cite such person to appear before them, and compel such appearance by attachment, and examine him and other witnesses on oath, for the discovery of the same.

Section 8. If any person interested in any estate file a like affidavit, against an executor or administrator, the court shall have the same power to cite him and compel his appearance and examination, as in case of other persons.

Section 9. If any such person refuse to answer proper interrogatories, the court may commit him to jail until he answer or be discharged by law.

Section 10. If any person charged and cited as aforesaid, shall appear and in his answer to the interrogatories, deny the truth of the facts alleged in the affidavit, the issue shall be tried by a jury, or, if neither party require a jury, by the court in a summary manner, and judgment shall be rendered according to the finding and for costs.

Section 11. If any person be convicted of unlawfully detaining such goods, money, chattels or effects, books, papers or evidences of debt, the court may compel the delivery thereof by attachment, or in case the person convicted be the executor or administrator, shall compel him to inventory, and have the same appraised as the property of the estate.

The affidavit provided for in the 7th section of the statute, was duly filed by the administrator in this cause, and charges that the defendant had concealed and embezzled various goods, chattels, wares, merchandise, notes, accounts, books, certificates of deposit issued by the National Exchange Bank of Jefferson City, Missouri, and the First National Bank of Jefferson City, Missouri, and various other evidences of debt and choses in action of the deceased, amounting in the aggregate to about $12,500, and constituting the whole of his personal property, and that she had them in her possession and under her control, and refused to deliver them up to said administrator on demand, etc. The defendant being duly cited, appeared in the probate

court, and filed her answer, which, in effect, put in issue the allegations and charges of the affidavit.

On a trial of the issues before the probate court—a jury having been waived—the court after hearing the evidence and arguments in the cause, found that the defendant had in her possession, and refused to surrender, a large amount of goods, chattels and effects of the deceased, of the description mentioned in the affidavit and enumerated in the finding, consisting mostly of promissory notes on various parties, and certificates of deposit in certain banks, for large sums of money, and certificates of shares of stock in a certain bank, some articles of personal property, title papers to real estate, some money and other evidences of debt payable to the deceased, and also the household and kitchen furniture and other property possessed by the deceased, at his death, as alleged in the complaint; and thereupon ordered that the defendant deliver up said effects to said administrator forthwith, and that plaintiff recover his costs, etc. From this finding and judgment of the probate court, the defendant, in due time, appealed this cause to the circuit court, where, at the May term, 1879, the cause was again heard *de novo*, by the court, a jury having been waived, and Henry Flanagan, Esq., acting as special judge, by stipulation of the parties, the Hon. E. L. Edwards, judge of said court, having been of counsel in the cause. At this hearing before the circuit court, as appears from the bill of exceptions, a large amount of evidence was taken; but for the purpose of properly disposing of this case, it will be sufficient to state its substance generally.

It appears that plaintiff's intestate died in September, 1879; that for the last ten or twelve years of his life he had been engaged principally, in merchandising in Russellville, Cole county, Missouri. The business was conducted in his name, the bills and invoices were made in his name, the notes and accounts were taken and entered in the same manner. At the time of his death, there was on hand, in the store, where the business was conducted, a general as-

sortment of merchandise, dry goods, groceries, shoes and boots, hats and caps, sugar and coffee, etc., estimated at the value of a little over $1,000. There were also a number of promissory notes, on various parties, for divers sums of money, aggregating in amount somewhere between $3,000 and $4,000, some of which were secured by deeds of trust. There were, likewise, certificates of deposits in banks, to the amount of $2,500 with interest; also accounts, on various parties, to the amount of $500. There were also certificates of bank stock to the amount of $200, all of which were in the name and payable to said estate. Besides these there were likewise on hand, at his death, various articles of personal property: One two-horse wagon, one spring wagon, one span of mules, one cow, two or three hogs, a small lot of corn and hay, some garden tools, fishing tackle, household and kitchen furniture generally, some money and title deeds to some four or five lots in the town of Russellville and forty acres of land near by. It also appears that upon the death of said intestate, his widow, the defendant, took and held the possession and control of all said personal property and effects, including said promissory notes, certificates of deposit and shares of bank stock, deeds of trust, title papers and other evidences of debt, claiming to be the absolute owner thereof, and as such lawfully entitled to the possession. It further appears that after the death of her said husband, the defendant sold goods and collected money to the amount of $500, which she deposited in bank, in her own name; and that she also sold the mules in question for $160, and the cow for $25; and that the remainder of said property and effects still appeared to be in her possession and control, and that she refused to surrender the same to said administrator, on demand, claiming to be the owner as aforesaid.

It also further appears that the intestate, W. H. Eans, and the defendant intermarried in 1848, and lived together as husband and wife, from that date, to the time of his death in 1878, a period of thirty years; that at the time of

the marriage the wife owned a large amount of property in her own right, variously estimated at from $13,000 to $16,000, and from $15,000 to $20,000; while the husband had but two horses and two or three loads of corn. This property of the wife, it appears, came to her in fee and absolutely, under the will of her first husband, Ivan Scruggs, and consisted, mainly, of a half interest in 1,400 acres of real estate, six heads of horses, some sheep, some cattle, two yoke of oxen, one wagon, farming implements, blacksmith tools, about $1,000 in money, and five or six negro slaves.

It likewise further appears, that just before the marriage, and in contemplation thereof, the defendant and the intestate, for the purpose of preserving said property of the wife, with its rents, profits and proceeds to the sole and separate use of the wife, or to such use as she might think fit to appoint; and to protect the same from all liability to the payment of his debts, and also to exclude therefrom all right, title or control of said intended husband, his executor, administrator or assignees, duly made and entered into the following marriage contract, to-wit:

"An indenture made and entered into between William H. Eans, of the first part, and Maria Louisa Scruggs, of the second part. Whereas, the said M. L. Scruggs is seized in fee of the undivided half of the following described real estate, (describing it,) and whereas, also, the said M. L. Scruggs is possessed in her own right absolutely, of the following described personal estate, that is to say: (certain slaves, cattle, etc); and whereas, a marriage is intended shortly to be solemnized between the said Eans and the said Scruggs upon the contract of which said marriage the said Eans has agreed, if the same shall take effect, then notwithstanding the said marriage, he and the said Eans, his executors, administrators or assigns shall not and will not intermeddle with or have any right, title or interest either in law or in equity in or to any part of the rents, profits or issues of any of the above described property, whether real

or personal, but the same shall continue, remain and be to the said M. Louisa Scruggs, or to such uses as she shall think fit to appoint. Now, this indenture witnesseth, that for the making of this agreement effectual in law and for the preserving the rents and profits of said property to and for the separate use of the said M. L. Scruggs, and so that the same shall not be in the power and disposal of said Eans, he, the said Eans, doth covenant to and with the said M. L. Scruggs that nothwithstanding the said intended marriage shall take effect, all the rents and profits which shall from time to time become due from all or any part of said property, and all increase thereof shall be accounted, taken and recovered as a separate and distinct estate of and from the estate of him, the said Eans, and be in nowise liable or subject to him or to the payment of any of his debts, but the same shall be used and disposed of in such manner as the said M. L. Scruggs shall direct, and all of said separate property before allotted to the said M. L. Scruggs, and the produce and increase thereof shall be had, taken, held and enjoyed and disposed of either in whole or in part in such manner and in such way as the said M. L. Scruggs shall order, appoint or direct; and the said Eans doth further covenant and agree, that in the event the said intended marriage shall take place, he will in nowise interfere with any arrangement heretofore made by the said M. L. Scruggs for the maintenance and support of the father and mother of her late husband, Ivan Scruggs, deceased, but the same shall be under the sole control and direction of the said M. L. Scruggs. In witness whereof, etc."

Upon the marriage, which followed this contract, the husband and wife lived on the old homestead of the wife, until 1853, when they sold out, and moved to what was afterwards called the " Hemstreet farm," where they resided until 1865, when they again sold, and moved to Russellville, where they remained until the husband's death in 1878. The husband upon the marriage took the possession and management of his wife's property ; and during the

interval of thirty years used and employed it, with its profits, increase and proceeds, in various enterprises of farming, blacksmithing, milling and merchandising, all of which he carried on and conducted in his own name, coupled with his individual labor, oversight and management. In 1853, all the wife's real estate was sold by them, at the estimated price of $8,000, of which, $2,200, was paid in cash, and received by the husband, and the balance of the price was received in the form of real estate, which was deeded to both husband and wife, and by them occupied until its sale to Hemplead in 1865, for $6,000. With the proceeds of this sale, which was paid to and received by the husband, the parties moved to Russellville, where a part of the proceeds was invested in the purchase and improvement of lots and land in and near the town of Russellville, the title to which was taken in the name of the husband, and the remainder was invested in the business of merchandising, which was carried on and conducted in his name, as before stated. Whether the wife, at the time these deeds were made, had knowledge how the title was taken, does not clearly appear. Prior to the war, the farming and other operations were carried on and conducted mostly by slave labor, which was the property of the wife, under the management and supervision of the husband. Some of the slaves were sold by the husband, and the proceeds paid to him, others died and the remainder were freed by the war and the government at its close.

There was evidence tending to show that the husband Eans, when in good health, was an active business man, in the conduct and management of his affairs, and that what he said was law about the place. There was also evidence tending to show that, for some considerable time, his health was not good, and that he did but little work. It also appeared that, for a time, he was insane and at the asylum in Fulton some five months, and that he was considered insane after he left Fulton. There was some evidence tending to show, also, that the wife did much and nearly all the man-

agement about the Hemstreet farm; and much evidence to the effect that she participated actively in the management and conduct of the mercantile business at Russellville; that she usually accompanied her husband to St. Louis and elsewhere to aid in selecting and purchasing the stocks of goods; and that mercantile drummers were accustomed to be referred by the husband to the wife for orders in the choice of certain qualities of goods to be sent by such agents; that she as well as the husband, frequently had personal custody and charge of the moneys on hand from time to time, and that each took and used at will such portions of same as they desired, reporting the same to each other.    There was also evidence tending to show that at the time of the husband's death, there were no debts due or owing by the estate—the same, as far as known, having been paid off by the wife, at or before the husband's death. It appeared also that the plaintiff was the duly appointed administrator of the deceased husband; and that he was likewise his son-in-law, having married his daughter by a former wife; and the defendant was the widow of said deceased husband.

It may be added, also, that while the evidence shows tha the wife had knowledge that the husband was conducting and managing all the business operations in his own name, yet it fails to show any express assent or dissent on her part from this mode of managing and conducting the same; nor does it show any express claim by the husband, that the property in question was his, and not that of his wife.    It also further appears that all the original property, owned by the wife at the time of the marriage, had long been sold and converted into other property, and that all the various enterprises of the husband, during this period of thirty years, had been based, (with the exception hereinbefore stated,) upon the capital originally owned and possessed by the wife; or upon the profits, increase and proceeds thereof, coupled with the personal labor, oversight

and management of the husband, in conjunction with the aid and assistance of the wife as hereinbefore set out.

At the conclusion of the testimony, upon this state of facts, the plaintiff asked the following declarations of law, which the court refused, and the plaintiff excepted, to-wit:

1. The court declares the law to be that if G. W. A. Gordon is administrator of the estate of W. H. Eans, deceased, then he, in this action, is entitled to a judgment for the delivery to him of all shares of bank stock issued in favor of the said W. H. Eans in his lifetime, all certificates of deposit in banks made payable to the said W. H. Eans, or order, all notes, bonds and evidences of debt made payable to the said W. H. Eans, or order, also all books of account used by him in business transacted in his own name, and all other evidences of indebtedness to him, or evidences of title to real or personal property, provided the same are now and at the commencement of this action were in the possession or under the control of the defendant and by her detained from the possession of said administrator.

2. Plaintiff is entitled to recover all goods, wares, merchandise, etc., in the store-house in which deceased did business in his own name before his death, that there remained at the time of his death, provided that the same now is, and at the time of the commencement of this action were, in the possession and under the control of the defendant and by her detained.

3. Although it may appear to the court that by the terms of an antenuptial contract entered into between the defendant and W. H. Eans in 1848, defendant reserved a sole and separate estate in the land and personal property she then owned; that between then and 1857 the same was sold and the proceeds collected by W. H. Eans with knowledge and without objection on the part of defendant; that afterward the said proceeds were invested in a farm conveyed to W. H. Eans, upon which the said Eans and defendant lived as man and wife from 1857 to 1865; that the said farm was then sold and the purchase money paid over

to W. H. Eans with the knowledge of defendant and without objection on her part; that afterward the proceeds of said sale were loaned out and deposited in banks in the name of W. H. Eans, and used by him in mercantile and mining business carried on in his own name, all with the knowledge of defendant and not against her will, until his death in September, 1878, and that the property here sought to be recovered is the proceeds thereof, and the money loaned and deposited as aforesaid, is the proceeds of the sale of the land or a part thereof, still in this action, the plaintiff ought to recover.

4.    The plaintiff is entitled to recover all personal property to which Eans, in his lifetime, was possessed and had the legal title, provided the same is now and at the commencement of this suit was in defendant's possession and by her detained.

5.    Although from the evidence in this case it may appear that defendant, in a suit in equity, might charge W. H. Eans' estate with a part or the whole of her separate estate by him received, still in this proceeding the plaintiff is entitled to recover if the legal title was in Eans at the time of his death, accompanied with a claim thereto and had so been for more than ten years.

6.    If the legal title to the property sought to be recovered in this action was in W. H. Eans at the time of his death, and it had so been for more than ten years, with the knowledge and assent of defendant, then plaintiff ought to recover, although defendant in equity may be entitled to the whole or some part thereof.

At the instance of defendant, the court, over the objection of plaintiff, gave the following declarations of law, which were excepted to by plaintiff, to-wit:

4.    It is necessary in this case for the plaintiff to prove that the defendant has embezzled or concealed the property of W. H. Eans, deceased, charged in the affidavit, and an open and notorious possession of the property under claim of ownership is neither embezzlement nor concealment,

within the meaning of the law, and if the court believes from the evidence that the defendant is in the open and notorious possession of the property named in the affidavit under claim of ownership, then the county court has no jurisdiction, and the complaint ought to be dismissed.

5. Under the pleadings and the evidence in the cause the plaintiff cannot recover.

The court thereupon, on its own motion, gave the following additional declaration of law, to which the plaintiff objected and excepted at the time, to-wit:

If the court find from the evidence that the property alleged by the plaintiff to be concealed and embezzled by the defendant, Mrs. Eans, is held by her under claim or color of right as her separate estate, and that to settle the respective rights of the administrator and the defendant to the property, an action at law or suit in equity is necessary, then the county court, as a court of probate, had no jurisdiction to entertain this proceeding, and the complaint ought to be dismissed.

Whereupon the court found accordingly, and thereupon dismissed the complaint for the want of jurisdiction in the probate court, to entertain and try the same. From this judgment of the circuit court, the plaintiff has appealed to this court.

The declarations of law given by the court at the instance of the defendant and on its own motion, virtually declare that, in proceedings under this statute, the probate court has no jurisdiction, except in cases where the defendant is guilty of concealment or embezzlement in a technical sense; and that said statute has no application to cases where the defendant is in possession under claim and color of title; or, in other words, that the probate court has no jurisdiction in proceedings of this sort to try the right of property between the administrator and the defendant, where, as in this case, they set up conflicting claims to the property in dispute.

This, we think, is not the law. Sections 7, 10 and 11

1. ADMINISTRATION: discovery of assets.

should be construed together, and when so read, not only include cases of technical concealment and embezzlement, but also those where the defendant otherwise wrongfully detains the property of the estate. Such, we think, is the true construction of the statute. This has been virtually decided by this court in the case of *Dameron v. Dameron,* 19 Mo. 317. Judge Scott, in construing this statute, used this language : " The person charged with concealing or embezzling the effects, is to be cited before the county or probate court, examined on oath and compelled to answer. If he denies the right of the executor or administrator to the property, the right is to be tried in a summary manner. If, upon the examination or trial, the person charged is convicted of unlawfully detaining the effects, the court may compel the delivery thereof by attachment." So in the case of *Howel v. Howel,* 37 Mo. 124. That case, like this, was a proceeding under the statute, by the executor of the deceased husband, against his widow, and the case turned upon the question of ownership, between the husband and wife, to the property in controversy. See p. 127.

In these proceedings the question is necessarily averred in the affidavit, and when its allegations are denied, as in this case, necessarily involved in the issues to be tried. Without title in the intestate, the administrator clearly has no standing in court; and when the defendant is the real owner, he or she certainly ought to be allowed to show that fact, to defeat a recovery or conviction.

In the case at bar, the question between the administrator and the defendant was as to the ownership of the property in controversy. The plaintiff, on the one hand, claimed that permitting the husband to sell said property, receive the money therefor, and use the same in his business during the period of time and in the manner indicated by the facts in the evidence, was of itself, an appointment and disposition of the property, by the wife, in favor of the husband, within the meaning of the marriage contract itself. The defendant, on the other hand, denies this proposition, and

insists that where there is a marriage contract, like this, between husband and wife, and no trustee is appointed by the instrument itself, the law makes the husband trustee for the wife, and like any other trustee, the husband can reap no benefit to himself by the use of the property; or acquire title thereto by investing the same or its proceeds in his own name without her assent thereto and therefor, and that, in point of fact, she made no such appointment or disposition, and that the property and its proceeds are still rightfully hers.

Whether the property has been thus appointed or disposed of, or still remains the separate property of the wife, as contemplated by the marriage contract, is, at most, a question of intent and fact, to be found by the jury, or the court, accordingly as the same is tried, under all the facts and circumstances in evidence, in connection with the marriage contract itself. Under the statute in question, we think the probate court had jurisdiction to hear and decide these questions and others properly arising in the case, in the summary manner pointed out; and that it was error in the circuit court, on appeal, to dismiss the complaint for want of jurisdiction; and that it should have proceeded to hear and decide the question, under proper instructions or declarations of law applicable to the case made by the facts, as they shall appear in evidence at the trial. If any error should arise on the trial, we think it better to undertake to correct it hereafter, than to anticipate, with more particularity, what those instructions or declarations should be. They necessarily must depend upon the facts and circumstances as they may appear upon the trial.

It may not be amiss to add that even if the property should be found to be that of the intestate, the widow 2. ——: widow's allowance. would be entitled to keep her absolute property, as provided by sections 33, 35 and 36 of Wagner's Statutes, page 88; and ought not to be compelled to surrender the same under this proceeding.

For these reasons the judgment of the circuit court is

reversed and the cause remanded for further proceedings, in conformity to this opinion. All concur, except HENRY, J., who dissents.