JAMES DINSMOOR

*v.*

BENJAMIN BRESSLER, Admr.

*Filed at Ottawa May 12, 1896—Rehearing denied November 6, 1896.*

1. EXECUTORS AND ADMINISTRATORS—*provision to reach concealed property of deceased, construed.* The provisions of the Administration act (Hurd's Stat. 1895, p. 122, secs. 80, 81,) for summary proceedings against and commitment of any person having property "belonging to any deceased person, which he refuses to disclose or deliver to the administrator," apply only to money or property remaining unchanged and *in specie,* and not to the proceeds of collections made by an attorney under an employment by the administrator.

2. SAME—*sufficient showing as to capacity in which an attorney received money.* An affidavit under the Administration act, charging that defendant, "acting as attorney for the estate of deceased," collected moneys, an order for the payment of which is sought, sufficiently shows that the money was collected while acting as attorney for the administrator, and not in pursuance of a previous employment by the deceased.

3. CONTEMPT—*when an attorney may purge himself of contempt.* An attorney against whom a proceeding under the Administration act is brought to compel the payment of moneys collected by him, should be permitted to purge himself by his answer, as the charge is in the nature of an attachment for contempt.

4. ATTORNEYS AT LAW—*how proceeded against for failure to pay over moneys collected.* The fact that an attorney who refuses to pay over money collected for a client is guilty of embezzlement, does not make him subject to the summary proceedings provided by sections 81 and 82 of the Aministration act, but he may be proceeded against by the methods pointed out for the punishment of faithless attorneys in other tribunals.

5. JUDGMENTS—*erroneous commitment under summary proceeding—collateral attack.* A judgment in summary proceedings finding that

an attorney has money of an estate and ordering him to pay it, although affirmed, is not, upon a subsequent judgment committing him to jail for non-payment, conclusive of the authority of the court to make such commitment, where the affidavit shows that he is not subject to such proceeding, as the subsequent proceedings are void and may be collaterally attacked.

APPEAL from the Circuit Court of Whiteside county; the Hon. JOHN D. CRABTREE, Judge, presiding.

On May 7, 1892, appellee as administrator of the estate of Abram Ulmer, deceased, filed an affidavit in the county court under section 81 of the Administration act, charging that appellant and one Jarvis Dinsmoor, acting as attorneys for said estate, had collected $1030.00 belonging thereto, and retained and refused to pay over $730.00 of said amount to appellee, as administrator, although often requested so to do. Citation was issued ordering said attorneys to appear, and show cause why they should not be compelled to pay the money so retained by them to appellee or into court. On October 10, 1892, the county or probate court made an order, dismissing the proceeding as to Jarvis Dinsmoor, and ordering appellant to pay $1030.00 to appellee as administrator within ten days, and, in default of doing so, that execution therefor issue against him. Appellant took an appeal from said order to the circuit court, where the matter was tried *de novo;* and on June 5, 1893, the circuit court entered an order or judgment finding that appellant had $700.00 in his hands belonging to said estate, and ordered him to pay that amount to appellee as administrator, for the use of said estate within twenty days, and, in default of such payment, that appellee have execution therefor. Appellant took an appeal from the judgment of the circuit court to the Appellate Court. The Appellate Court affirmed the judgment of the circuit court except that portion of it awarding execution, and reversed it only as to so much of the judgment as

awarded execution against appellant, as may be seen by reference to the opinion of the Appellate Court in *Dinsmoor* v. *Bressler*, 56 Ill. App. 207. On January 23, 1895, the remanding order of the Appellate Court was filed in the circuit court, and on February 4, 1895, the cause was re-docketed. On January 24, 1895, written notice was given to appellant of the filing of said remanding order, and written demand was made upon him for the payment of the $700.00. On February 27, 1895, a motion for a rule on appellant to show cause was allowed. On February 29, 1895, an order was entered by the circuit court "that the said defendant be required to show cause by the first day of the next term of court why an attachment should not issue against him for a disobedience of the order of this court, made in said case on the 5th day of June, 1893, requiring said defendant to pay the administrator the sum of $700.00." Appellant filed an answer to this order. Upon motion of appellee, an attachment writ was issued against appellant. Appellant moved to quash the rule to show cause and the attachment writ, and filed an answer in support of his motion. Appellant's motion to quash was overruled by the circuit court, and that court, upon motion by appellee, entered the following order: "By order of said court requisition having been duly made on January 24, 1895, upon said defendant for the payment of said sum of money mentioned in the order of June 5, 1893, and said defendant having refused to pay said sum of money, it is ordered by the court that said defendant, James Dinsmoor, be committed to the county jail until he shall comply with said order," etc. To the making of which order the defendant excepted. It is from this order that the present appeal is prosecuted.

Sections 81 and 82 of the act in regard to the administration of estates, (1 Starr & Cur. Stat. p. 226), under which said affidavit was made and by virtue of which said order of commitment was entered, are as follows:

"Sec. 81. If any executor or administrator, or other person interested in any estate, shall state upon oath, to any county court, that he believes that any person has in [his] possession, or has concealed or embezzled, any goods, chattels, moneys or effects, books of account, papers or any evidences of debt whatever, or titles to lands belonging to any deceased person; or that he believes that any person has any knowledge or information of or concerning any indebtedness or evidence of indebtedness, or property, titles or effects, belonging to any deceased person, which knowledge or information is necessary to the recovery of the same, by suit or otherwise, by the executor or administrator, of which the executor or administrator is ignorant, and that such person refuses to give to the executor or administrator such knowledge or information, the court shall require such person to appear before it by citation, and may examine him on oath, and hear the testimony of such executor or administrator, and other evidence offered by either party, and make such order in the premises as the case may require.

"Sec. 82. If such person refuses to answer such proper interrogatories as may be propounded to him, or refuses to deliver up such property or effects, or in case the same has been converted, the proceeds or value thereof, upon a requisition being made for that purpose by an order of the said court, such court may commit such person to jail until he shall comply with the order of the court therein."

JARVIS DINSMOOR, for appellant.

V. S. FERGUSON, and J. G. MANAHAN, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The contention of appellant is, that the original affidavit filed in the county court under section 81 of the Administration act charges appellant with having in his possession money belonging to the *estate* of the deceased

intestate, and not money belonging to the deceased. It is said, that section 81 only contemplates a case where the person charged has money or effects, which came into his hands during the lifetime of the deceased, and not a case where the person charged has received money or effects which came to his hands after the death of the deceased. The theory of counsel is, that property spoken of in the statute as "belonging to any deceased person" means such property only, as remains unchanged or in specie, and that has not been collected or administered.

There is much force in this view. In *United States* v. *Walker*, 109 U. S. 258, the Supreme Court of the United States said: "The goods and chattels, personal estate and property of the deceased are such only as remain unchanged and in specie. When a debt due the deceased is collected or a chattel of his estate is sold, the money received becomes the property of the administrator, and he is accountable therefor to those beneficially interested in the estate. * * * When assets have been turned into money by an executor or administrator and the money mingled with his own, the assets have ceased to exist as assets or estate of the decedent. * * * The authorities we have referred to all concur in the proposition that where personal property of an estate under administration has been sold or a debt collected, the proceeds are not property of the decedent, but are the individual property of the administrator."

We are not prepared to adopt as strictly accurate the broad statement, that money of an estate collected by the administrator thereof is the individual property of such administrator; but the statement of the above extract, that money or property belonging to the deceased means such money or property as remains unchanged and *in specie*, is in harmony with the early decisions of this court, which construed section 90 of the Statute of Wills as it existed in 1845. Said section 90 was as follows: "If any executor or administrator or other person inter-

ested in any estate shall state upon oath to any court of probate, that he believes that any person has in possession, or has concealed or embezzled any goods, chattels, moneys or effects, books of account, papers or any evidences of debt whatever, or titles to land, belonging to any deceased person, the court shall require such person to appear before it by citation, and may examine him on oath, touching the same, and if such person shall refuse to answer such proper interrogatories as may be propounded by the court, or person interested as aforesaid, or shall refuse to deliver up such property or effects as aforesaid, upon a requisition being made for that purpose by an order of the said court of probate, such court may commit such person to jail, until he shall comply with the order of the court therein." (Rev. Stat. Ill. of 1845, p. 556). Sections 81 and 82 of the Administration act of April 1, 1872, and the amendment to section 81 passed on March 19, 1873, which are sections 81 and 82 as they now appear in the Revised Statutes, and as they are quoted in the statement preceding this opinion, were finally substituted for said original section 90 of the Statute of Wills. (Stat. of Ill. of 1871-72, (Myers' ed.) p. 383; 3 Gross' Stat. of Ill. p. 457; Rev. Stat. 1874, pp. 118, 119).

In *Williams* v. *Conley, Admr.* 20 Ill. 643, where Williams was cited to appear before the probate court upon an affidavit made under said section 90, then in force, charging him with having money belonging to the deceased who was his wife's father, and which money, he supposed, had been given to his wife by the deceased in his lifetime, we said (p. 644): "There is no probability, nor do we presume, that the court found, that Williams still had the money in his possession in specie, although it is undoubtedly true, that he was indebted to the estate for the amount received by his wife of her father for safe keeping. We think the statute quoted was not designed to afford the means of collecting debts due to estates, but for the purpose of obtaining the possession of money,

books, papers, or property, which remained in specie, and which was capable of being identified and pointed out. Unless Williams had the identical money in his possession which had been received by his wife, the court could not properly order him to pay it over to the administrator, nor would it be possible for him to comply with such order. The payment of other money to an equal amount would not be a compliance with the statute, nor of a proper order of the court made under the statute, any more than it would be to deliver one horse when he had received another. We think the court misconstrued the statute, and its judgment must be reversed and the cause remanded."

*Wade* v. *Pritchard*, 69 Ill. 279, was another case, which arose under section 90 of the Statute of Wills; there, under an affidavit made under that section, a person, having two notes belonging to an estate, was ordered to surrender them to the administrator; and we said in relation to section 90 (p. 281): "The purpose of the enactment was to enable executors and administrators, and parties having an interest in the estate, to discover assets, and it was designed to afford a more speedy and less expensive mode than by detinue, trover or replevin. The remedy was cumulative to those, and the only change it intended to introduce from an ordinary trial was to enable the court to compel the person charged with having the property to discover, on oath, whether he had property in his possession."

It will be noticed, that, by sections 81 and 82, as adopted in 1872 and amended in 1873, there was a provision not only for examining the party charged under oath, but also for hearing the testimony of the administrator or executor, "and other evidence offered by either party;" and a provision to punish, not only for refusing to answer questions and for refusing to deliver up the property or effects, but also for refusing to deliver up "the proceeds or value thereof" in case the same had

"been converted." When the statute required the party to deliver up the proceeds of property which had been converted, or the value of property which had been converted, it required something more than the delivery of property "which remained in specie and which was capable of being identified and being pointed out." Sections 81 and 82 are, therefore, materially different from the old section 90. The words, "if such person refuses * * * to deliver up such property or effects, or in case the same has been converted, the proceeds or value thereof," as used in section 82, evidently refer back to the property mentioned in section 81 as "belonging to any deceased person." Hence it would seem to be plain, that the statute refers only to property, which came to the hands of the person charged before the death of the deceased person, and which was converted before or after such death.

But in the case of *Blair* v. *Sennott*, 134 Ill. 78, which arose under the statute as it now exists, it appeared, that Blair had acted as agent of the deceased and made loans and taken securities for him in his lifetime, and, after the death of the deceased, had collected money "on account of such loans and from such securities;" and, upon affidavit made under section 81, was ordered to pay over the money to the administratrix; and we there said of section 81 (p. 86): "In our opinion this does not mean merely goods, chattels, moneys, etc., placed in the hands of the party charged by the deceased in his lifetime, but we think it includes also goods, chattels, moneys, etc., which belong to the estate of the deceased, and which have come into the hands of the party charged since the death of the deceased. The language contemplates present ownership, and since a dead man can own nothing, 'belonging to any deceased person' can only mean 'belonging to the estate of any deceased person.' * * * Money of the principal in the hands of the agent is still the money of the principal, and the agent has no right to use it or pay it out for his own private purposes. While

he has this money he is not, technically the creditor of his principal, but simply his trustee. * * * It is, in such case, therefore, always the legal presumption, that the money in the hands of the agent is the identical money that he received, and he will not be heard to allege his embezzlement or breach of trust to escape a liability arising from that presumption."

It is to be noticed, that, in the *Blair case,* although the money was collected upon the securities after the death of the deceased, yet the securities themselves were taken during his lifetime; and the party charged was the agent of the deceased in his lifetime and obtained such securities as his agent before his death; and, because of his relation to the deceased as agent or trustee, the money in his hands was presumed to be the identical money which he received. Although the money collected in the *Blair case* was collected after the death of the deceased, yet there is nothing to show that he collected it as the agent of the administratrix, or under an employment by the administratrix for that purpose, but rather by reason of his agency for the deceased while the latter was alive, and by reason of his possession of the securities acquired through that agency. The doctrine of that case should be limited to the facts thereof, and its language should be qualified so as to conform to such facts.

In the case at bar the affidavit, upon which the proceeding in the county court was commenced is as follows: "Benjamin Bressler, of said county, in State aforesaid, being first duly sworn, on oath says that he is the administrator, with will annexed, of the estate of said Abram Ulmer, deceased, duly appointed and commissioned as such by said court on the 6th day of March, 1889. Affiant says that on or about the 19th day of January, 1891, the circuit clerk of said Whiteside county, or the First National Bank of Morrison, paid to James Dinsmoor and Jarvis Dinsmoor, acting as attorneys for the estate of said Abram Ulmer, deceased, the sum of about $1030

belonging to said estate; that out of said sum affiant is informed said Dinsmoors paid the sum of about $300 on the award of Nancy Ulmer; that the remainder of said $1030, to-wit, about $730, said Dinsmoors retain in their possession and refuse to pay the same to this affiant, as such administrator, although often requested so to do by affiant. And affiant therefore asks that said James Dinsmoor and Jarvis Dinsmoor be ordered, by citation of this honorable court, to appear within a short day and show cause, if any they have, why they should not be compelled by this court to pay the said money so retained by them, as aforesaid, to this affiant, as such administrator, or pay the same into this court for affiant." .

This affidavit shows, that, nearly two years after the administrator was appointed, appellant and Jarvis Dinsmoor, acting as attorneys for the estate of the deceased, collected the money which they were subsequently ordered to pay over. Their collection of the money was not merely after the death of the deceased, as was the fact in the *Blair case,* but they collected it while "acting as attorneys for the estate" of the deceased. There is no complaint in the affidavit, that they did not have the right to collect the money; the complaint is that they retained it in their possession and refused to pay it over. If they rightfully collected it while "acting as attorneys for the estate," they must have been employed for that purpose by the estate, that is to say, by its lawful representative, the administrator. They could not have been rightfully "acting as attorneys for the estate" in pursuance of any previous employment by the deceased in his lifetime, because the authority of an attorney to collect for a client is revoked by the death of the client, and he has no authority to proceed further without a new retainer by the personal representative of the client. (*Turnan* v. *Temke,* 84 Ill. 286). We think the affidavit shows upon its face, that the money was collected by appellant while acting as attorney for the administrator of the estate.

Moreover, the answer of appellant filed in support of his motion to quash the writ alleges, that he collected the money as attorney for appellee as administrator after a protracted litigation in the cause of *Benjamin Bressler, Admr.* v. *The First National Bank*, in the circuit and Appellate Courts, conducted under contract with said administrator. The charge against appellant was in the nature of an attachment for contempt, and where such is the case, the respondent ought to be permitted to purge himself by his answers. (*In re Paschal*, 10 Wall. 483; *Buck* v. *Buck*, 60 Ill. 105).

The case at bar resolves itself into this: An administrator of an estate employs an attorney to bring suit against a bank; suit is brought accordingly and the money is collected by the attorney, who does not pay it over to the administrator; can such administrator go into the probate court, make an affidavit under said section 81, and secure a commitment of the attorney to jail by the summary process provided for in said sections 81 and 82? We think not. We are of the opinion, that those sections were not designed for any such purpose. It is well settled, that debts created after the death of the intestate or testator cannot be proved in the probate court. (1 Woerner's Am. Law of Adm'n, sec. 152, p. 348). For the same reason and upon the same principle, a debt due from an attorney to the administrator of an estate, growing out of a contract between the two, and, so, created after the death of the intestate, cannot be collected in the probate court through the machinery of the proceedings authorized by sections 81 and 82.

The summary proceeding in the probate court to compel the production and delivery of property "is not the proper remedy * * * to try contested rights and title to property between the executor and others." (2 Woerner's Am. Law of Adm'n, sec. 325, p. 681). "Nor does the power conferred upon probate courts to subpoena and examine parties alleged to conceal or withhold property

of the estate authorize such courts to try the title to the property in dispute." (1 id. sec. 151, p. 347; Schouler on Executors and Admrs. sec. 270).

If sections 81 and 82 could be used to settle contested rights to property as between executors and administrators on the one side and third persons on the other, they would operate as an infringement upon the constitutional right to trial by jury, as they contain no provision for a jury trial. (*Howell* v. *Fry, Admr.* 19 Ohio St. 556; *Meinzer* v. *Bevington,* 42 id. 325; *Matter of Beebe,* 20 Hun, 462; *Ex parte Casey,* 71 Cal. 269; *Eans* v. *Eans,* 79 Mo. 53; *Gibson* v. *Cook, Admr.* 62 Md. 256).

It is said, that an attorney, who refuses to pay over money collected by him for a client, is guilty of embezzlement, and, for this reason, may be proceeded against under sections 81 and 82. This may be true where an attorney, who has acted for a deceased party in his lifetime, embezzles money in his own hands at the time of his client's death, or collected upon securities taken by him before his client's death. (*Blair* v. *Sennott, supra*). But where an attorney has collected moneys under a contract of employment entered into with the administrator of an estate, he is to be proceeded against, not in the probate court, but by the methods pointed out for the punishment of faithless attorneys ·in other tribunals. Section 6 of the act of March 28, 1874, in relation to attorneys, being chapter 13 of the Revised Statutes, provides that any judge of a circuit court shall have power to suspend any attorney from practice in the court over which he presides. Section 7 of the same act provides, that, where an attorney has collected money belonging to a client, and refuses to pay it over after demand and tender of reasonable fees and expenses, application may be made to the Supreme Court of the State for a rule upon him to show cause why his name should not be stricken from the roll. Section 79 of division 1 of the Criminal Code provides, that, if any attorney at law

shall refuse to pay over money collected by him, less his proper charges, on demand, etc., he shall be fined not exceeding double the amount retained by him, or confined in the county jail not exceeding one year, or both, and be removed from office, etc. (1 Starr & Cur. Stat. p. 777). Where an application is made to compel an attorney to pay money into the court in which the suit has been prosecuted as a result of which the money has been obtained, such application is a *quasi* criminal proceeding, and "if no dishonesty appears the party will be left to his action." (*In re Paschal, supra.*)

Appellee claims, that the judgment of the circuit court, finding that appellant had the money and ordering him to pay it, is *res judicata* inasmuch as it has been affirmed by the Appellate Court, and no appeal was taken from the judgment of affirmance. But it is to be remembered, that, after the remanding order from the Appellate Court was filed in the circuit court, a new judgment was rendered committing the appellant to jail. The absence of authority in the court making the order for attachment may be shown in a proceeding for contempt. A party cannot be in contempt of court for disobeying an order which the court had no authority to make. (*Leopold* v. *People*, 140 Ill. 552; *People* v. *Weigley*, 155 id. 491). Here, the affidavit made under section 81 is jurisdictional in its character, and if the affidavit does not show a case which gives the court jurisdiction, the subsequent proceedings including the judgment, are void and may be attacked collaterally. For the reasons already stated the affidavit was not sufficient within the meaning of section 81 to authorize the proceedings based upon it.

The judgment of the circuit court is accordingly reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.    *Reversed and remanded.*