GEORGE W. HOEHN, Executor of LIZZIE BORGMANN, Deceased, Appellant, v. LIZZIE STRUTTMANN, Respondent.

71   399
93   1662

St. Louis Court of Appeals, May 18, 1897.

1. **Witness, Waiver of Incompetency of.** The incompetency of a witness is waived by the party, objecting to the admission of his testimony, making the witness his witness.

2. **Gift Causa Mortis:** EVIDENCE: INSTRUCTIONS. In a proceeding by an executor, under section 74 of the statute, where there was substantial evidence that the deceased made a valid gift of certain notes and other property to defendant, and that the gift was made in view of death, a charge that if the jury believed that defendant was in lawful possession of such property prior to decedent's death, claiming title thereto *in good faith*, they must find for defendant, was authorized both by the law and the evidence; and if inconsistent with plaintiff's instructions, he could not complain, when his instructions were more favorable to him than the law warranted.

3. ———: WILL: REVOCATION. The making of a will by which the testatrix bequeathed all of her property to plaintiff, was not a revocation of a gift *causa mortis*, which could only be made during the life of the donor, while the will did not take effect until after the death of the testatrix.

*Appeal from the Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED; Judge BLAND concurring, Judge BOND dissenting.

*Robert Shackelford* and *E. P. Johnson* for appellant.

The court erred in refusing instruction number 5 offered by plaintiff. Miss Borgmann being dead, the defendant's mouth was closed by the statute from testifying to any verbal contract made with deceased. Aside from the statutory provisions in this class of cases, the court erred in permitting defendant to be examined by her attorney upon other matters than such as she was examined on in chief. *Caughlin v. Haeussler*, 50 Mo. 126; *Allen v. Chouteau*, 102 *Id.* 309.

The defendant was also incompetent to prove a verbal contract of gift to her from deceased, and the plaintiff's objection to her so testifying should have been sustained. *Scott v. Riley*, 49 Mo. App. 251.

The evidence of defendant's own witnesses proves, beyond doubt, that deceased, at most, only showed an effort to will the property to defendant, which, not being in writing, was void, and the verdict was based entirely on her testimony as to what deceased said to her, which, being utterly incompetent, was totally insufficient to support the verdict. *Tygard v. McComb*, 54 Mo. App. 85; 109 Mo. 90.

The court erred in giving instructions number 3 and 7 for defendant. They are both erroneous and inconsistent with number 5 given for plaintiff. *Eans*

*v. Eans*, 79 Mo. 53; *Dameron v. Dameron*, 19 *Id*. 317. See, also, *Erhart v. Dietrich*, 118 Mo. 419, 429; *Swisler v. Storts*, 30 Mo. App. 163.

The instructions herein pointed out are so erroneous and inconsistent that no number of correct instructions could by any possibility cure their error. *Jones v. Talbott*, 4 Mo. 279; *State v. Herrell*, 97 *Id*. 105; *State v. McNally*, 87 *Id*. 644; *Frederick v. Algain*, 88 *Id*. 598; *Thomas v. Babb*, 45 *Id*. 384; *Buddenberg v. Trans. Co.*, 108 *Id*. 394; *Bluedorn v. R'y*, *Id*. 439.

The court also erred in giving instruction number 9 for defendant over plaintiff's objection. *Keyl v. Westerhaus*, 42 Mo. App. 57.

*Claude R. Ball* and *James F. Ball* for respondent.

It is immaterial whether decedent's gift was a gift *inter vivos*, or a gift *causa mortis*. *Keyl v. Westerhaus*, 42 Mo. App. 49; *Tomlinson v. Ellison*, 104 Mo. 105; *Tygard v. McComb*, 53 Mo. App. 85. See, also, *Dun v. Bank*, 109 Mo. at 101; *Brandon v. Dawson*, 51 Mo. App. 337; *Gartside v. Pohlman*, 45 *Id*. 160; *Nasse v. Thomas*, 39 *Id*. 178.

Plaintiff having called defendant to testify on his part, waived any alleged incompetency on her part to testify. *Tomlinson v. Ellison, supra.*

Instructions numbers 3 and 7 given for defendant are not inconsistent with number 5 given for plaintiff. *Gordon v. Eans*, 97 Mo. 587.

BIGGS, J.—The plaintiff is the executor of the estate of Lizzie Borgmann, deceased. On the twenty-seventh day of January, 1896, he filed in the probate court of Montgomery county an affidavit in which he charged that the defendant had concealed and embezzled or wrongfully withheld certain notes belonging to

the estate of the deceased. The defendant denied the charge under oath. Thereupon the executor, by leave of the probate court, filed interrogatories as provided by section 75 of the statute. These interrogatories were answered by the defendant. She admitted that she held the notes, and that they originally belonged to Lizzie Borgmann, but she set up claim and title to them under a gift made by Lizzie Borgmann just prior to her death. The plaintiff took issue on the answer. On the affidavit of the defendant that the judge of the probate court was a material witness, the cause was transferred to the circuit court. On a trial there the issues were found for the defendant. The plaintiff has appealed and assigns for error the admission of incompetent evidence, and the giving and refusing of instructions.

The plaintiff introduced the defendant as a witness. She was examined in chief as to the circumstances under which she obtained possession of the notes. She stated, that just prior to the death of the deceased the latter gave the notes to her, and that since that time she had retained them in her possession. On the cross-examination the court permitted her to testify to the conversation between her and the deceased at the time of the alleged gift. To this the plaintiff objected. The defendant was undoubtedly an incompetent witness to testify in her own favor in the first instance (R. S. 1889, sec. 8918), but the act of the plaintiff in making her his witness was a waiver of her incompetency. *Tomlinson v. Ellison*, 104 Mo. 105. She had been interrogated as to the circumstances under which she had obtained the possession of the notes, and had stated without objection that the deceased gave the notes to her, and then delivered them to her or to her husband for her. This made it competent for her

WITNESS,
waiver of incompetency of.

counsel to ask for a full disclosure of all that was said and done on that occasion. To avoid this counsel claim that the original examination of the defendant was formal, and was made only in compliance with section 75 of the statute, which requires the accused to be examined under oath by the court. The record is against this. The bill of exceptions recites that the plaintiff introduced and examined the defendant as his witness.

At the instance of the defendant the circuit court gave the following instruction, of which the plaintiff complains.

"(7) The court instructs the jury, that the charge here against the defendant, Mrs. Lizzie Struttmann, is one of embezzling assets, belonging to the estate of Lizzie Borgmann, deceased, and if you believe from the evidence in the case that defendant was in lawful possession of the notes, deeds of trust, goods and the trunk and its contents described in defendant's answer prior to the death of said Lizzie Borgmann, claiming title thereto in good faith, then your verdict must be for the defendant."

The objection urged against the foregoing instruction involves the construction of section 74 of the statute under which this proceeding was commenced. The section reads: "If the executor, or administrator, or other person interested in any estate, file an affidavit in the proper court, stating that the affiant has good cause to believe, and does believe, that any person has concealed or embezzled, *or is otherwise wrongfully withholding* any goods, chattels, money, books, papers, or evidences of debt of the deceased, and has them in his possession or under his control, the court may cite such person to appear before it, and compel such appearance by attachment." The italicized clause of the section

*GIFT: causa mortis: evidence: instructions.*

was added by way of amendment in 1881 (Laws 1881, page 32). To what extent did the amendment enlarge the inquiry, is the question. The contention of plaintiff is that the purpose of the amendment was to invest probate courts with complete jurisdiction to fully try and finally determine in such proceedings all questions of title to the property in controversy. If this is the proper construction to be given to the amendment, then the defendant's instruction is wrong. The idea conveyed by it is that if the defendant did not fraudulently obtain possession of the notes and she held them openly and in good faith under a claim of title, then the issues should be found for her. The question presented has been discussed by some of the judges of the supreme court, but has never, to our knowledge, been authoritatively decided. The proceeding in *Gordon v. Eans*, 97 Mo. 587, was instituted before the amendment, but was tried afterward. In that case the circuit court in obedience to the directions of the supreme court on a former appeal, extended the inquiry to the good faith or *bona fides* of the claim of title set up by Eans. The supreme court in the majority opinion adhered to its former ruling, and, in explanation of it, held that the inquiry must be confined to the *good faith* of the defendant's claim of title, and that probate courts had not the jurisdiction in such proceedings to finally settle the respective rights of the parties to the property. Judge BARCLAY, in a separate opinion, concurred in the result upon the ground that the amendment of the statute invested probate courts with jurisdiction to inquire into a *mere* wrongful withholding of the property. Judge SHERWOOD was of the opinion that the jurisdiction had been wrongfully exercised. Judge BRACE, in a separate opinion, stated that the statute did not confer on probate courts the jurisdiction to determine the respective rights of an administrator

and the defendant to the property, where the latter held the property openly under color of right.

It may be considered as settled that under the old statute it was not intended to confer on probate courts jurisdiction to determine controverted questions of title. Does the amendment indicate an intention to do so? We would say not. Judge WOERNER says that "the right or title of the decedent to property claimed by the executor or administrator * * * must, if an adjudication becomes necessary, be tried in courts of general jurisdiction, unless such jurisdiction be *expressly conferred* on probate courts." Woerner's Am. Law of Adm., sec. 151. We said in *Cardwell v. Stewart*, 67 Mo. App. 61: "Where such jurisdiction has been conferred upon probate courts by statute, the jurisdiction has never been carried by intendment beyond the plain language of the mandate of the statute, because, as repeatedly decided, the policy is very questionable of turning into probate courts, from their accustomed channels, a great stream of litigation touching contested rights to personal chattels which these courts from their constitution are so little calculated to sustain." In construing a similar statute the supreme court of Arkansas denied the jurisdiction of probate courts thereunder to litigate controverted titles to property. The court ruled that nothing short of an express statute conferring such jurisdiction would suffice. *Moss v. Sandefur*, 15 Ark. 381. In the course of the opinion the court remarked that the statute was enacted to reach persons "who have been intrusted in the lifetime of the deceased with the custody of his effects, or who, at or about the time of his death, or soon afterward, coming into their possession, either casually or by design, hold quietly and secretly, without color of lawful authority, and evading any discovery of the truth in the premises either by direct means or studied

silence; all with fraudulent views, stimulated by the difficulty or impossibility of proof, on the part of the executor or administrator, either of ownership or identity." Applying the doctrine of the foregoing authorities we think it reasonably clear that the legislature intended by the amendment to confer on probate courts the authority to inquire into the *bona fides* of defendant's claim of title, and, if found to be merely colorable, to compel a surrender of the property. It is true that the jurisdiction extended that far under the old statute as construed by the supreme court in the *Eans* case. But prior to the decision in that case it was a question whether one who openly asserted title to the property could, under any circumstances, be compelled under this statute to deliver it up, and in order to settle the matter the amendment was made. There was substantial evidence here that the deceased made a valid gift of the notes and other property to the defendant, and that the gift was made in view of death. Hence we conclude that the instruction complained of was authorized both by the law and the evidence. The objection that it is inconsistent with plaintiff's instructions may be disposed of with the observation, that his instructions were more favorable to him than the law warrants.

The law is well established that a gift *causa mortis* may be revoked by the donor. After the alleged gift Miss Borgmann made a will in which she GIFT causa mortis: will: revocation. bequeathed all of her property to the plaintiff. It is urged that the making of the will was a revocation of the gift. On principle this could not be, for the revocation must be made during the life of the donor, and a will does not take effect until after the death of the testator. Thornton on Gifts, sec. 45. What we have said finally disposes of the appeal, and other questions need not be discussed.

The plaintiff has no just cause to complain of the mode or manner of the trial. Hence the judgment of the circuit court will be affirmed. Judge BLAND concurs; Judge BOND dissents.