Hunt, J.
This proceeding is an appeal from an order of the probate court, dismissing a complaint filed therein charging Henry Meader with having concealed, embezzled and conveyed away property of the estate of Jacob Ledig, deceased. ■
The evidence was somewhat voluminous, due in part to' the fact that proper accounts had not been filed in the probate court as to the disposition of the assets of the estate. In accordance with a practice which seems to have been formally in vogue in the probate court, a so-called final report in lieu of an account was apparently prepared by a clerk of the probate court, contrary to the provisions of Section 534, Revised Statutes, and the administration sections, which contemplates accounts under which the rights of minors and other beneficiaries can be satisfactorily determined when questions pertaining thereto arise.
Jacob Ledig died November 12, 1890, leaving a widow, Louisa Ledig, and four minor children aged from fourteen down to three years. He left an estate consisting of personal property contained in a saloon and adjoining dining-room and living rooms, appraised .at $83.95, an insurance policy, appraised as cash at $1,945, and a promissory note in the sum of $3,692, appraised as doubtful. The widow was appointed administratrix. An appraisement was duly made and inventory filed. The personal property in the saloon and adjoining rooms and $1,000 in cash was set off to the widow for her first year’s support. The estate in addition to the widow’s allowance and debts produced more than the amount of $2,500 now in .controversy, although from the evidence so far offered, it is difficult to say how much more.
No further attention was paid to the statutory requirements as to administration in form or substance, although on 'September 1, 1.893, a so-called final report apparently prepared by the clerk of the probate court, and signed by the administrator, manifestly not an accounting, was filed in the probate court.
On April 4, 1893, Henry Meader having become the owner of the saloon, married the administratrix. The administratrix, in contemplation of such marriage, shortly thereafter turned over to ITenry Meader $2,500, saying, according to Meader’s *171 testimony, “This is all T have; take it and raise the children.” Mr. Header was familiar with the history of the family and knew that the money was part of the estate of Jacob Ledig. lie accepted the money in good faith, believing that his promise to raise the children was a consideration therefor. The administratrix seems to have made the Franciscan Brothers her bankers, as she had deposited money with them at various times after her husband’s death, and received notes therefor payable to herself individually. The $2,500 was turned over by having the brothers take up such notes and making a new note for $2,500 payable to Henry Header.
The life of the new family was- the life of a thrifty German family conducting a respectable and prosperous-saloon, at which lunches were served to many customers, consisting in large part of the frequenters of a neighboring well patronized street market. All the family, young and old, worked about the saloon or household, or in preparation of serving of the lunches. The younger children were sent to school. The saloon prospered and was in a short time sold and another purchased by Mr. Header in the down town business district. The family then lived apart from the saloon, which was prosperous. The older daughter, prior to her mother’s marriage, had worked not only at home but for others, and marrying when she was eighteen, received little or no benefit from any care given by Mr. Header, but the younger children, especially the youngest, as her stepfather prospered, received much in the way of schools and manner of living, which she might not otherwise have received. No complaint was made by any one until the mother died in 1908, when an administrator cle bonis non of Jacob Ledig’s estate was appointed, and this litigation begun. All the children except the youngest had by that time left Mr. Header, not always under amicable circumstances.
In general, it may be said that Henry Header provided for his step-children to the same extent as though they were his own, and treated them in the same way as their father would have done had he lived, considering all the circumstances under which their lot was cast, and it may be further said that, except the oldest child, the children profited directly to an extent *172 inversely according to their ages, by his becoming their stepfather.
When Henry Header became the step-father of the Ledig children, by obligation of law he became obligated to provide for them, so that when he received the $2,500 for such purpose, it was without consideration, and when he received the $2,500 from the administratrix of the estate of Jacob Ledig, knowing it to be such, although received in good, faith for the purpose of raising the children, he is chargeable with such $2,500 and holds it subject to the same trust as when it was in the hands of the administratrix, and as so held it can be followed in Header’s hands. Ward v. Ward, 12 C. D., 60; Paschall v. Hinderer, 28 O. S., 568.
The step-father is sometimes assisted in the performance'of his duty toward his minor step-child by allowance made from the minor’s estate, but the necessity therefor has not been shown in this case and the administratrix had no authority so to do.
The question, however, to be first decided in this proceeding is whether he can be so charged under Section 6053, Revised Statutes, which provides that:
“Upon complaint made to the probate court :"= * * by the executor * * against any person or persons suspected of having concealed, embezzled or conveyed away any..of the .moneys, goods, chattels, things in action, or effects of such deceased, the court shall cite,” etc.
This section and the following sections provide for an examination of the person cited, for a jury if demanded, for the summoning of witnesses, and if the person cited is found guilty, for a judgment for the amount of money or value of the effects, etc., with a ten per cent, penalty.
These sections have been several times amended, but, whenever construed, have been held to provide a summary proceeding, and as such should not be given a construction beyond the terms of the statute. Howell v. Fry, 19 O. S., 556; Meinzier v. Bevington, 42 O. S., 327.
Other states have more or less similar statutes, and the mere fact that the person accused may be chargeable in equity with *173 the property in question or its proceeds, or that recovery therefor can be had at law, is not sufficient to give the court jurisdiction to render a judgment for such property in such sunmiaiy proceeding. Moss v. Saddefur, Ex., 15 Ark., 381-388; Dismoor v. Brassler, 164 Ill., 211; Ex parte Casey, 71 Cal., 269; Gardner v. Gillihan, 20 Ore., 598; Meyer v. Garthwaite, 92 Wis., 571; Saddington’s Estate v. Hewitt, 70 Wis., 240; Hoehn v. Struttmann, 71 Mo. App., 399; Hook, Admr., v. Dyer, 47 Mo., 214; Gibson v. Cook, 62 Md., 256.
Therefore to bring the case within the terms of Section 6053, the property must have been concealed, embezzled or conveyed away by the person cited.
In this case there was no concealment except the fact for which Mr. Meader seems in no way responsible, that the assets of the estate were not accounted for in the so-called final report of the administratrix; nor was there any embezzlement, construing such term as we must in accordance with the crime of embezzlement under our statute; nor was there any conveying away. The money was received and mingled with his own and used by Mr. Meader as such. That can not be the sense in which the word conveyed is used in the statute, without attributing to such word a meaning which would not ordinarily apply to what was done in this case.
It follows, therefore, that neither the probate court, nor this court upon appeal from the probate court, can render a judgment for the amount in question upon the complaint filed.